**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| UNITED STATES STEEL CORPORATION; UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL, AND SERVICE WORKERS INTERNATIONAL UNION AFL-CIO, | ) ) ) ) ) ) ) | Civil Action No. 10-1284 Judge Nora Barry Fischer |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

The Equal Employment Opportunity Commission ("EEOC") initiated this Americans with Disabilities Act action, as a potential class action, on behalf of charging party Abigail DeSimone ("DeSimone")[1] and all similarly situated employees of Defendant U.S. Steel ("U.S. Steel"). Pending before the Court is EEOC's Motion for Reconsideration (Docket No. 154) of this Court's Order adopting the Special Master's Supplemental Report and Recommendation, which addressed EEOC's submission of confidential conciliation documents to this Court, in violation of 42 U.S.C. § 2000e-5(b), and imposed sanctions against EEOC for such violations (Docket No. 118). EEOC argues that said Order should be reconsidered because U.S. Steel allegedly submitted an *ex parte* letter ("letter")[2] to the Special Master addressing the merits of

---

[1] Ms. DeSimone has since settled her individual case. (Docket No. 192).
[2] Said letter is fully described *infra* at p. 7.

the matters pending before her and thereby allegedly tainted both the Special Master's recommendations and this Court's Order adopting same. (Docket No. 155 at 1; Docket No. 163 at 4; Docket No. 194 at p. 30, lns. 12-25).   Thus, EEOC seeks not only reconsideration of this Court's Order adopting the Special Master's Supplemental Report and Recommendation (Docket No. 118), but, in addition, recusal of the Special Master, suppression of the Special Master's reports (Docket Nos. 82 and 103) and sanctions against U.S. Steel. (Docket No. 155 at 15).  U.S. Steel maintains that the letter is not an *ex parte* communication in violation of this Court's Order Appointing the Special Master. (Docket No. 159).   The Motion has been fully briefed.   The parties presented evidence and oral argument at a Motion Hearing on February 15, 2012.   The Court ordered preparation of the Transcript of said Hearing. (Docket No. 185).  It was filed of record on April 4, 2012.[3]  (Docket No. 194).   Upon consideration of all of the parties' submissions (Docket Nos. 154; 155; 156; 159; 163; 173; 190), the Transcript of the February 15, 2012 Hearing (Docket No. 194), and the Transcript of the March 17, 2011 Telephonic Status Conference (Docket No. 193), EEOC's Motions for Reconsideration, Recusal, to Suppress, and for Sanctions (Docket No. 154) are DENIED, with prejudice.

## II.  FACTS AND PROCEDURAL HISTORY

The litigation of this case has been lengthy and more than contentious as a result of the EEOC's filing of confidential conciliation documents in support of its opposition to U.S. Steel's Motion to Dismiss (Docket No. 23).  As a consequence of EEOC's action, U.S. Steel filed a Motion for Expedited Relief on March 4, 2011, wherein it argued that it was procedurally improper for EEOC to attach proposed conciliation agreements and correspondence exchanged

---

[3] Filing was delayed by EEOC's failure to pay the Court Reporter in a prompt manner.

between the parties to its Response to Defendant U.S. Steel's Motion to Dismiss. (Docket No. 53). Less than a week later, on March 10, 2011, U.S. Steel filed a Motion to Seal wherein it requested that the Court seal EEOC's Response and Sur-reply to Defendant U.S. Steel's Motion for Expedited Relief arguing that EEOC's representations therein contain information that EEOC is prohibited from disclosing by statute, specifically, 42 U.S.C. § 2000e-5(b).[4] (Docket No. 64).[5]

In considering same, this Court convened a Telephonic Status Conference on March 17, 2011. (Docket No. 67). During the conference, counsel for U.S. Steel suggested that the parties stipulate to the contents of the documents at issue and informed the Court that it would draft a

---

[4] 42 U.S.C. § 2000e-5(b) provides that:

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible, and so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

42 U.S.C. § 2000e-5(b).

[5] Further, even Section 6 of the ADR Policies and Procedures for the Western District of Pennsylvania provides, as a general rule, that the contents of all documents and communications during the ADR process are confidential. *See* http://www.pawd.uscourts.gov/Applications/pawd_adr/Documents/ADRPolicies.pdf (last visited Mar. 30, 2012).

proposed stipulation to share with EEOC. (*Id.*).   In response to EEOC's counsel's question

concerning the proposed stipulation, counsel for U.S. Steel set out its parameters:

> Okay.  The first question is can we stipulate that the documents
> that we described in our motion for expedited relief are, in fact,
> documents created in exchange during the conciliation process that
> led to his [sic] litigation.  Secondly, that the pages that we asked to
> be stricken from the Commission's response to our motion to
> dismiss do, in fact, refer to conciliation documents.[6]

(Docket No. 193 at p. 14, lns. 22-25; p. 15, lns. 1-4).   The Court then directed EEOC to notify

the Court as to whether a stipulation had been reached. (*Id.*).   On March 21, 2011, EEOC filed its

"Stipulation,"[7] wherein it stated that the parties had not reached an agreement on a stipulation.

(Docket No. 68). Instead, EEOC asserted that the Court could rule on U.S. Steel's Motion for

Expedited Relief without considering Exhibits 8 and 9. (*Id.*).

In light of the above circumstances and a decision of this Court, *EEOC v. LifeCare*

*Management Services, Inc.*, Civ. Act. No. 10-1358, 2009 WL 772834 (W.D.Pa. Mar. 17, 2009),

wherein Judge McVerry found that he must recuse himself after viewing proposed conciliation

agreements and correspondence exchanged between the parties, this Court entered an Order, with

agreement of counsel, dated April 7, 2011, referring consideration of U.S. Steel's Motion for

Expedited Relief and Motion to Seal to Special Master Sally Cimini, Esquire. (Docket No. 76).[8]

---

[6] In U.S. Steel's Motion for Expedited Relief, U.S. Steel specifically referred to Exhibits 7 through 10 and pages 2, 22 and 23 of EEOC's Brief in Opposition to U.S. Steel's Motion to Dismiss and argued that all of those enumerated documents should be stricken from the record. (Docket No. 53).

[7] A stipulation is defined as "a voluntary agreement between opposing parties concerning some relevant point." BLACK'S LAW DICTIONARY (9th ed. 2009).  Here however, the document that EEOC filed did not constitute a stipulation because the parties did not reach an agreement. (Docket No. 68).

[8] Sally Griffith Cimini, Esquire is highly regarded for her experience in the areas of employment law (over 25 years of experience) and alternative dispute resolution. She is a partner at Leech Tishman and chairs the firm's Alternative Dispute Resolution and Employment Practice Groups.  She actively participates as a Neutral in the Alternative Dispute Resolution Program for the United States District Court for the Western District of Pennsylvania. She is also a frequent trainer, panelist and seminar participant in the areas of employment law and alternative dispute resolution.

The Order set forth the scope of the referral and, as required by Federal Rule of Civil Procedure 53(b), set forth the boundaries of any *ex parte* communications:

> The Special Master shall be empowered to communicate on an *ex parte* basis with a party or the Court for purposes of seeking to maintain confidentiality and for routine scheduling or for other matters which do not concern the merits of Defendant U.S. Steel's Motion to Expedite Relief (Docket No. [53]) and Motion to Seal (Docket No. [64]). The Special Master may communicate with the Court *ex parte* in all matters as to which the Special Master has been empowered to act.

(Docket No. 76 ¶ e). That same day, the parties participated in a telephone conference with the Special Master. (Docket No. 155 at 1; Docket No. 159 at 2).

There was no Court Reporter present at that conference.[9] (Docket No. 194 at p. 23, lns. 10-14). U.S. Steel asserts that during the conference, the Special Master asked the parties to describe the background of the dispute and the parties' positions. (Docket No. 159 at 2). EEOC contends that its counsel does not recall any substantive discussion with the Special Master concerning the background of the dispute and the parties' positions, nor does EEOC's counsel recall that the Special Master asked the parties to describe the contents of same. (Docket No. 163 at n. 2).

As the content of the conference was disputed and it was not transcribed, the Special Master was called to testify at the February 15, 2012 Hearing and Oral Argument. She testified credibly[10] regarding the discussion during the conference she convened. The Special Master advised that all four attorneys of record spoke (Docket No. 194 at p. 53, ln. 17) and that she asked them to describe the dispute, their contentions and the background of the case. (*Id.* at p. 50,

---

[9] The Court suggests that a better practice would be to have a Court Reporter present.

[10] *See EBC, Inc. and State Steel Supply, Inc. v. Clark Building Systems, Inc.,* Civ. A. No. 05-1549, 2008 WL 4922107, at *9 (W.D.Pa. Nov. 13, 2008) (citing *Parker v. Long Beach Mortgage Company,* 534 F.Supp.2d 528, 535-536 (E.D.Pa. 2008)) (permitting the Court to assess the credibility of witnesses while resolving factual disputes).

lns. 12-15).  She noted that the parties spoke at length about the conciliation documents and any references made to those documents.  (*Id.* at p. 51, lns. 1-2).  Each party took ten minutes to describe what had occurred and what the Special Master was to consider.  (*Id.* at lns. 3-5).  Counsel for EEOC informed the Special Master that it did not believe that it had violated the pertinent regulations and that U.S. Steel had waived the issue.  (*Id.* at lns. 10-12).  Alternatively, U.S. Steel's counsel argued that there was a clear violation and that it had not made any waiver.  (*Id.* at lns. 18-20).  The Special Master recalled that there was some discussion of the procedural history of the case and the parties referred to documents, which had been filed of record.  (*Id.* at p. 52, lns. 14-18).   From her view, the parties clearly stated their positions regarding the challenged conciliation documents and she believed that she understood the parties' arguments at that time.  (*Id.* at p. 54, lns. 14-17).  At the end of the call, she asked the attorneys to send her everything they wanted her to consider in conjunction with her report and recommendation to the Court and she set time frames for same.  (*Id.* at p. 52, lns. 24-25; p. 53, ln. 1).

In addition, the Special Master testified that it was her practice to send a post-conference email summarizing discussion during her conference with counsel, immediately following a conference call.  To this end, the conference commenced at 10:00 A.M. and she sent her follow-up email at 10:48 A.M. (*Id.* at p. 60, lns. 15-21).  The email was sent to all four counsel of record for EEOC and U.S. Steel and states the following:

> Thank you for attending the phone call this morning.  As we discussed, to expedite matters, instead of issuing a formal order, I am confirming the dates we agreed to via this email.  The following reflects my understanding of the items we have agreed upon:
> - April 11-The parties will provide me with hard copies of all pleadings and supporting documents that they would like me to review in connection with this matter, with the exception of the new matter to be submitted by U.S. Steel on April 13.

- April 13-U.S. Steel will submit an additional motion with supporting legal arguments concerning conciliation documents filed with the Court by the EEOC on or about March 25.
- April 25-EEOC will respond to the additional motion filed by U.S. Steel on April 13.
- If, due to the impending shutdown of federal government offices or the upcoming religious holidays, the parties need additional time to meet any of the aforementioned deadlines, please let me know and I will accommodate the parties.  If we later determine it to be necessary, I will request that the Court extend the May 20, 2011 deadline to accommodate the parties.
- Following my receipt and review of all the aforementioned documents, I will notify the parties whether I need to schedule *ex parte* conferences, a joint conference, or a date for oral argument.
- In order to keep the cost of this matter down, I will communicate via email as much as possible and will provide the parties with advance notice of the topics to be discussed in any *ex parte* conference, joint conference or oral argument.
  If my understanding of any of the above points is incorrect, please let me know.  I look forward to working with all of you.  Thank you for your cooperation.[11]

(Docket No. 154-2).

Pursuant to the Special Master's instructions, EEOC, by letter dated April 8, 2011, "copied" to all counsel, forwarded copies of its relevant briefing papers to the Special Master. (Docket No. 154-3).  Similarly, U.S. Steel drafted a cover letter, collected its relevant background materials and pleadings and submitted same to the Special Master and EEOC. (Docket No. 159 at 2).  However, U.S. Steel did not copy EEOC on its cover letter. (*Id.*).  EEOC acknowledges that it received a copy of U.S. Steel's supplemental submissions to the Special Master on April 13, 2011, but not the cover letter. (Docket No. 155 at 2).  Interestingly, EEOC now admits that it did not send U.S. Steel, nor U.S. Steel's Co-Defendant, United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International

---

[11] The Court notes that the Special Master contemplated *ex parte* communications in this email she sent confirming the conference with counsel.  The Court also finds it interesting that EEOC apparently didn't question this email despite the Special Master's invitation to point out anything incorrect in it.

Union ("Union"), a copy of its cover letter, despite the fact that its cover letter indicates that it was copied to all counsel. (Docket No. 194 at p. 28, lns. 4-10).

After additional briefing, the Special Master filed her Report and Recommendation on May 29, 2011 and her Supplemental Report and Recommendation on September 1, 2011. (Docket Nos. 82 and 103). Upon consideration and independent review of the record[12] *de novo*, particularly, the initial and supplemental Special Master's Reports and Recommendations, the objections and responses thereto, and case law and authority cited therein as well as this Court's independent research, this Court entered a Memorandum Order on September 30, 2011, in which it concluded that EEOC violated Section 2000e-5(b) and awarded U.S. Steel the opportunity to seek reasonable attorneys' fees and costs in addressing EEOC's misconduct. (Docket No. 118).

Presently, EEOC claims that it did not become aware of the challenged U.S. Steel letter until U.S. Steel submitted its billing records, in conjunction with its fee petition. (Docket No. 155 at 2). As EEOC's counsel did not recall receipt of said letter, its representatives searched its hard and electronic files, but were unable to locate the letter. (*Id.*). As a result, EEOC contacted the Special Master's office and requested a copy of the letter, which the Special Master's office assistant emailed to EEOC's counsel. (*Id.*). Upon review of said letter, EEOC determined that it had never received a copy of same. (*Id.*). Hence, it filed the instant Motion for Reconsideration on December 6, 2011. (Docket No. 154). The Court established a briefing schedule and scheduled Oral Argument. (Docket Nos. 167, 169 and 170). The Court also ordered the Special Master to file an Affidavit, addressing the assertions contained in EEOC's Motion for Reconsideration. (Docket No. 168).

---

[12] As noted, EEOC had previously stated that the Court could rule without review of Exhibits 8 and 9. (Docket No. 68); *see also* p. 4 *supra*.

Pursuant to this Court's January 3, 2012 Order, the Special Master filed her Affidavit on February 10, 2012. (Docket No. 182).  Therein, she states that she does not recall reading or using either party's cover letter in formulating her Report and Recommendation. (*Id.*).  The Court also took testimony of the Special Master and heard Oral Argument on EEOC's Motion for Reconsideration on February 15, 2012. (Docket No. 183).  Then the Court directed the Special Master to search her files for any notes she took during her April 7, 2011 conference with the parties and for her bill regarding same. (*Id.*).

The next day, the Special Master emailed all parties and the Court, attaching her billing statement and stating that she could not locate her notes from the April 7, 2011 conference.  The Special Master's billing record for the conference call records a total time of 1.2 hours, which includes her time spent preparing for and attending the call; a telephone call with the Court's then judicial clerk regarding the deadlines Order; as well as her time spent emailing the parties, as described above.[13]  On February 21, 2012, EEOC filed its Response Regarding the Special Master's Notes and Billing Statement. (Docket No. 190).  U.S. Steel filed no further briefing, but the Court did review U.S. Steel's billing records (Docket No. 148),[14]  in conjunction with the pending Motion and in light of the evidence and argument advanced at the February 15, 2012 Hearing.  The Court has also considered the transcript of that Hearing and the transcript of the March 17, 2011 proceedings, which touched on the dispute at hand.

This matter is now fully briefed and ripe for disposition. (Docket Nos. 155; 156; 159; 163; 173; 190).  Accordingly, the Court now turns to its summary of the parties' arguments.

---

[13]  *See* email reprinted at p. 7, *supra*.

[14]  The Court notes that U.S. Steel's billing record for the conference call records a total time of 2.5 hours, which includes time spent attending the call; a conference with co-counsel; conferences regarding projects to complete as a result of the conference call with the Special Master; as well as memos regarding same. (Docket No. 148).  EEOC has not produced any billing records or time entries.

### III.  OVERVIEW OF ARGUMENTS

A. <u>EEOC</u>

EEOC argues that U.S. Steel's April 11, 2011 letter to the Special Master (Docket No. 154-4) serves as evidence that U.S. Steel engaged in *ex parte* communication with the Special Master regarding the merits of U.S. Steel's Motion for Expedited Relief. (Docket No. 155 at 1). EEOC contends that the letter contains substantive argument and advocates U.S. Steel's position on the merits. (Docket No. 163 at 1).  The letter also provides the Special Master with "skewed and inaccurate" background and history, according to EEOC. (*Id.* at 2).  EEOC maintains that U.S. Steel submitted this communication to not only advocate its position, but to bias the Special Master. (Docket No. 155 at 1).  As the letter concerns the merits of the case, EEOC asserts that the letter constitutes new evidence resulting in manifest injustice. (Docket No. 163 at 4; Docket No. 194 at p. 30, lns. 12-25).  Accordingly, EEOC seeks reconsideration of this Court's Order adopting the Special Master's Supplemental Report and Recommendation, recusal of the Special Master, suppression of the Special Master's reports and sanctions against U.S. Steel. (Docket No. 155 at 15).

B. <u>U.S. Steel</u>

U.S. Steel counters that the letter was merely a cover letter explaining the materials that U.S. Steel was forwarding to the Special Master at her request and contains no substantive legal argument. (Docket No. 159 at 1).  It contends that the letter had no bearing on the issue before the Special Master, i.e., whether EEOC violated 42 U.S.C. § 2000e-5(b). (*Id.* at 4).  Instead, the letter reiterates the background of the parties' dispute and the history of the proceedings that led to the appointment of the Special Master. (*Id.* at 1).  All of the information contained in the letter was either discussed during the April 7, 2011 conference call with the Special Master, a matter of public record from prior filings, or already available to EEOC through e-mail correspondence

between the parties. (*Id.*).   U.S. Steel also asserts that such communication, which does not concern the merits of the referred motions, was authorized by this Court's referral Order. (*Id.* at 4).   Given same, U.S. Steel maintains that the letter does not constitute new evidence and reconsideration, recusal of the Special Master and sanctions are not warranted.   Further, U.S. Steel argues that there is no manifest injustice, as this Court conducted an independent *de novo* review of the record in reaching its decision to adopt the Special Master's Supplemental Report and Recommendation. (Docket No. 173 at 2).

## IV. STANDARD OF REVIEW

### A. Timeliness

Section II.M. of this Court's Practices and Procedures provides that "[a]ny Motions for reconsideration shall be filed within seven (7) days," *See Practices and Procedures of Judge Nora Barry Fischer, Effective March 23, 2010, available at*: http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf.   The Court's Order adopting the Special Master's Supplemental Report and Recommendation was filed on September 30, 2011. (Docket No. 118).   EEOC did not file its Motion for Reconsideration until December 6, 2011 (Docket No. 154), as it claims that it discovered the letter at issue on November 28, 2011. (Docket No. 154-5).   In any event, EEOC's Motion for Reconsideration is untimely under Federal Rule of Civil Procedure 6(a)(1), by one day.[15]   Yet, U.S. Steel never raised lack of

---

[15] Federal Rule of Civil Procedure 6(a)(1) provides that:
> (a) Computing Time. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
> (1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:
> (A) exclude the day of the event that triggers the period;
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

timeliness as an objection to EEOC's Motion.  Despite EEOC's tardiness (without leave of Court), this Court will proceed to rule on EEOC's Motion.

    B.  <u>Basis for Reconsideration</u>

    The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Lab. Inc. v. Dentsply Intern, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The standard that Plaintiff must meet to prevail on a motion for reconsideration is high. *Berry v. Jacobs IMC, LLC*, 99 F.App'x. 405, 410 (3d Cir. 2004). The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Linhart v. Zitelli & Brodland, P.C.*, Civ. A. No. 10-530, 2011 WL 5188061, at * 2 (W.D.Pa. Nov. 1, 2011) (citing *Max's Seafood Café by Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  Here, EEOC argues that reconsideration is warranted because the *ex parte* letter constitutes new evidence justifying reconsideration.  It also claims that a manifest injustice results from the Special Master's consideration of same during the proceedings before her. (Docket No. 154).

    "A motion for reconsideration relying on the discovery of new evidence subsequent to an initial order should only be granted if the party presenting the new evidence demonstrates that the new evidence would have changed the initial rulings." *Graham v. Progressive Direct Ins. Co.*, No. 09-969, 2010 WL 3092684, at *2 (W.D.Pa. Aug. 6, 2010). Where the basis of a motion

---

           (C) include the last day of the period, but if the last day is a Saturday, Sunday, or
           legal holiday, the period continues to run until the end of the next day that is not
           a Saturday, Sunday, or legal holiday.
Fed.R.Civ. P. 6(a)(1).

for reconsideration is to correct a manifest injustice, the moving party must show that the underlying decision "was clearly wrong and that adherence to the decision would create a manifest injustice." *Payne v. DeLuca,* No. 02–1927, 2006 WL 3590014, at *2 (W.D.Pa. Dec.11, 2006); *see also Donaldson v. Informatica Corp.,* Civ. A. No. 08-605, 2009 WL 5184380, *1 (W.D.Pa. Dec. 22, 2010).   Furthermore, "because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Id.* (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa. 1995)). It is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. *Id.* (citing *Dodge v. Susquehanna Univ.*, 796 F.Supp. 829, 830 (M.D.Pa. 1992)).

## V.  ANALYSIS

### A.  Applicable Law Regarding Special Masters

#### 1.  Rule 53

The appointment of a Special Master in federal court is governed by Rule 53 of the Federal Rules of Civil Procedure.  Rule 53 (b)(2) sets forth the parameters of an appointment order and provides that:

> The appointing order must direct the master to proceed with all reasonable diligence and must state: (A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c); **(B) the circumstances, if any, in which the master may communicate *ex parte* with the court or a party**; (C) the nature of the materials to be preserved and filed as the record of the master's activities; (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

Fed.R.Civ.P. 53(b)(2) (emphasis added).   This Court's Order appointing Ms. Cimini as Special

Master, explicitly addressed permissible *ex parte* communications with counsel for the parties.

To this end, the April 7, 2011 Appointment Order provides that:

> The Special Master shall be empowered to communicate on an *ex parte*
> basis with a party or the Court for purposes of seeking to maintain
> confidentiality and for routine scheduling or for other matters which do
> not concern the merits of Defendant U.S. Steel's Motion to Expedite
> Relief (Docket No. [53]) and Motion to Seal (Docket No. [64]).   The
> Special Master may communicate with the Court *ex parte* in all matters as
> to which the Special Master has been empowered to act.[16]

(Docket No. 76 ¶ e).   There are several cases within this Circuit, involving court orders

appointing Special Masters that use similar language to permit *ex parte* communications, which

do not concern the merits of the pending matter, between a Special Master and parties.   *See e.g.*

*Fleming Steel Co. v. W.M. Schlosser Co., Inc.*, No. Civ.A. 02-828, Civ.A. 03-1338, 2006 WL

1997365 (W.D.Pa. Jul. 14, 2006); *In re Bristol-Myers Squibb Sec. Litig.*, Civ. No. 00-1990, 2003

WL 25962198 (D.N.J. Jun. 25, 2003).

       2.  <u>Code of Conduct for U.S. Judges and Pennsylvania Rules of Professional
Conduct</u>

---

[16] EEOC is not challenging this Court's Appointment Order that permitted *ex parte* communications, which did not concern the merits of the then-pending matter, between the Special Master and parties.   Instead, EEOC is arguing that U.S. Steel violated this Court's Appointment Order by engaging in improper *ex parte* communication regarding the merits of the matters then-pending before the Special Master.   (*See* Docket Nos. 154; 155; 163).   In fact, EEOC maintains that its *ex parte* letter to the Special Master did not violate this Court's Appointment Order because it did not address the merits of the matters then-pending before the Special Master. (Docket No. 194 at p. 39, lns. 2-4).

In addition, the language of this Court's Appointment Order complies with the Code of Conduct for U.S. Judges and the Pennsylvania Rules of Professional Conduct[17] governing *ex parte* communications with the Court. *See* Code of Conduct for U.S. Judges Canon 3 § (A)(4)(b)*; see also* Pa. R. Prof. Cond. 3.5(b). According to the Code of Conduct for U.S. Judges, a judge may "when circumstances require it, permit *ex parte* communication for scheduling, administrative, or emergency purposes, but only if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication." Code of Conduct for U.S. Judges Canon 3 § (A)(4)(b). Likewise, the Pennsylvania Rules of Professional Conduct prohibit *ex parte* communications with a judicial officer as to the merits of the proceedings. *See* Pa. R. Prof. Cond. 3.5(b). The Court now turns to a discussion of the term "merits."

    3.  <u>Merits</u>

The term "merits" is defined as "the elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp. [*sic*] of procedure." BLACK'S LAW DICTIONARY (9th ed. 2009). Indeed, "it is well-established that an *ex parte* communication which does not concern the *merits* of the case is permissible." *Ferguson v. Sec'y for Dept. of Corrections*, 580 F.3d 1183, 1220 (11th Cir. 2009) (*quoting Drobny v. Comm'r*, 113 F.3d 670, 680 (7th Cir. 1997)); *see also In re School Asbestos Litig.,* 977 F.2d 764, 789 (3d Cir. 1992) (stating that *ex parte* contacts are "tolerated of necessity ... where related to non-merits issues [and] for administrative matters.").

    4.  <u>28 U.S.C. § 455(a)</u>

---

[17] As this case is proceeding in the United States District Court for the Western District of Pennsylvania and most of the attorneys of record are admitted in the Commonwealth of Pennsylvania, this Court looks to the Pennsylvania Rules of Professional Conduct.

In its Motion and supporting Brief, EEOC argues the import of 28 U.S.C. § 455(a) to the

present dispute.  This statute requires a federal judge to disqualify herself "in any proceeding in

which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

> It is a "catchall disqualification provision" covering situations in which a
> judge can be viewed as having a "bias or prejudice" concerning a party, a
> relationship to a party, or an interest in the litigation. *See In re Kensington
> Int'l Ltd.,* 353 F.3d 211, 220 (3d Cir.2003) (citing *United States v. Liteky,*
> 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). In
> conducting a § 455(a) analysis, "the appearance of impropriety must be
> viewed from the perspective of the objective, reasonable layperson ...." *In
> re Kensington Int'l Ltd.,* 368 F.3d 289, 303 (3d Cir.2004). If "a reasonable
> man, were he to know all the circumstances, would harbor doubts about
> the judge's impartiality .... then the judge must recuse." *In re Prudential
> Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283, 343 (3d
> Cir.1998).

*In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 WL 2758167, *6 (E.D.Pa. Jul. 14, 2008);

*see also Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993); *West Penn

Allegheny Health Sys., Inc. v. UPMC,* 09cv0480, 2012 WL 470179 (W.D.Pa. Feb. 14, 2012).

On its face, 28 U.S.C. § 455(a)  appears to apply only to justices, judges and magistrate

judges. However, Section 455(a) has also been extended to apply to Special Masters.

> Rule 53 extends the application of § 455 to special masters by providing
> that a special master "must not have a relationship to the parties, attorneys,
> action, or court that would require disqualification of a judge under 28
> U.S.C. § 455, unless the parties, with the court's approval, consent to the
> appointment after the master discloses any potential grounds for
> disqualification." Fed.R.Civ.P. 53(a)(2); *see also In re Kempthorne,* 449
> F.3d 1265, 1269 (D.C.Cir. 2006) (stating that "[w]e have held that a
> special master is subject to the same ethical restrictions as a judge when
> the special master serves as the 'functional equivalent' of a judge even
> though the special master is under a judge's 'control'") (citing *Jenkins v.
> Sterlacci,* 849 F.2d 627, 630-32 (D.C.Cir. 1988)).

*United States v. Tennessee*, No. 92-2062 D/P, 2010 WL 1212076, *12 (W.D.Tenn. Feb. 16,

2010); *see also Jenkins v. Sterlacci*, 849 F.2d 627 (D.C. Cir. 1988); *Cobell v. Norton*, 237 F.Supp.2d 71 (D.C. Cir. 2003); *In Re: Phillip A. Brooks*, 383 F.3d 1036 (D.C. Cir. 2004).

    B.   Analysis of U.S. Steel's April 11, 2011 Letter[18]

       In analyzing EEOC'S Motion for Reconsideration, this Court must first determine if U.S. Steel's letter constitutes an improper *ex parte* communication in violation of this Court's Appointment Order (Docket No. 76).[19]   Accordingly, this Court will examine the letter, paragraph by paragraph to determine if U.S. Steel improperly addresses the merits of its motions pending before the Special Master, by discussing the elements or grounds of its claim or the substantive considerations to be taken into account in deciding the motions.

       *Paragraph One*:

       Paragraph one states the following.

> Defendant, United States Steel Corporation (U.S. Steel), encloses for your review copies of its Motion for Expedited Relief and Brief in Support (Dkt. Nos. 53-54), its Reply Brief in Support of its Motion for Expedited Relief (Dkt. No. 60), and its Motion to Seal Plaintiff's Response and Sur-reply Briefs (Dkt. No. 64) (collectively, "U.S. Steel's Motions"), along with all exhibits referenced therein.

(Docket No. 154-4).

       During the February 15, 2012 Hearing and Oral Argument EEOC stated that it did not have any objections to this paragraph. (Docket No. 194 at p. 7, lns. 6-8).  However, for purposes of thorough analysis, the Court will address it.  Paragraph one merely describes the materials that U.S. Steel is enclosing with its letter.  It does not improperly address the elements or grounds of

---

[18] U.S. Steel's April 11, 2011 letter refers to various email exhibits. However, EEOC does not object to the email exhibits themselves, but instead objects to the content of letter.  EEOC's failure to object constitutes waiver regarding the email exhibits. *See Peterson v. City of Uniontown*, 441 F.App'x. 62, 63 (3d Cir. 2011) (failure to object constitutes a waiver); *see also In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 302 (3d Cir. 2010).

[19] A court has inherent authority to interpret its own orders.  *See, e.g. United States v. Spallone*, 399 F.3d 415, 421 (2nd Cir. 2005); *see also SEC v. Hermil, Inc.,* 838 F.2d 1151, 1153 (11th Cir. 1988) ("Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order.").

the claim or the substantive considerations to be taken into account in deciding the motions.  The Special Master had requested that the parties each transmit to her all relevant pleadings and supporting documents that they wished her to consider. (Docket No. 154-2).[20]  As such, U.S. Steel was required to comply by forwarding the requested papers.   Indeed, the referenced documents are the basis for the Special Master's appointment.   In order to comply with this Court's Order, the Special Master had to review them. (Docket No. 76).  As a result, the Court finds that paragraph one does not constitute improper *ex parte* communication in violation of this Court's Appointment Order.

*Paragraph Two*:

Paragraph two states the following.

> In responding to U.S. Steel's pending Motion to Dismiss (Dkt. No. 23) and again in responding to U.S. Steel's Motion for Expedited Relief (Dkt. No. 53), EEOC violated 42 U.S.C. § 2000e-5(b) by filing with the Court briefs and evidentiary exhibits that reflect what was "said or done during and as part of [EEOC's] informal [conciliation] endeavors" with U.S. Steel at the administrative level-which underlying documents and information are deemed confidential and protected from disclosure under 42 U.S.C § 2000e-5(b).   Namely, the underlying documents and information identified in U.S. Steel's Motions are contained in:
> - Exhibits 7-10 attached to EEOC's Brief in Opposition to Defendant U.S. Steel's Motion to Dismiss;
> - Pages 2, 22 and 23 of EEOC's Brief in Opposition to Defendant U.S. Steel's Motion to Dismiss;
> - Page 9 of EEOC's Response Brief in Opposition to U.S. Steel's Motion for Expedited Relief; and
> - Page 3 of EEOC's Sur-reply Brief in Opposition to U.S. Steel's Motion for Expedited Relief. [Footnote 1: During our telephone conference on April 7, 2011, Ms. Clickner committed to send you all of EEOC's pertinent filings.  As a result, U.S. Steel expects that the EEOC provided copies of all the materials referenced in these four bullet points.  Please let me know if they did not do so, and we will promptly provide you with copies of any missing materials.]

(Docket No. 154-4).

---

[20] *See* email reprinted at p. 7 *supra*.

EEOC argues that the second paragraph contains argument, which addresses the merits of the motions pending before the Special Master. (Docket No. 194 at p. 31, lns. 5-20).  Yet, in this Court's estimation, paragraph two merely identifies the location of the documents and information that U.S. Steel challenged in its motions.  It does not support or argue the contention that is the basis for U.S. Steel's motions, i.e, that it was procedurally improper for EEOC to attach proposed conciliation agreements and correspondence exchanged between the parties to its various Court filings because EEOC's representations therein contain information that EEOC is prohibited from disclosing by statute, specifically, 42 U.S.C. § 2000e-5(b). (Docket No. 76). In fact, akin to the language contained in paragraph two, this Court's Appointment Order, also identifies the contention that is the basis for U.S. Steel's motions by stating:

> AND NOW this 7th day of April, 2011, upon consideration of Defendant U.S. Steel's Motion to Expedite Relief (Docket No. [53]) wherein it argues that it was procedurally improper for EEOC to attach proposed conciliation agreements and correspondence exchanged between the parties to its Response to Defendant U.S. Steel's Motion (Docket No. [49]) and Defendant U.S. Steel's Motion to Seal (Docket No. [64]) wherein it requests that the Court seal EEOC's Response (Docket No. [60]) and Sur-reply (Docket No. [63]) to Defendant U.S. Steel's Motion (Docket No. [49]) arguing that EEOC's representations therein contain information that EEOC is prohibited from disclosing by statute, specifically, 42 U.S.C. § 2000e-5(b).

(Docket No. 76).

Indeed, the Special Master had access to the Court's Docket because the Court added her as Special Master in conjunction with the filing of its April 7, 2011 Appointment Order. Moreover, she repeatedly cited to the Court's docket in her Reports and Recommendations. (*See* Docket Nos. 82 and 103).  By pinpointing the places in the record where documents and information supporting its position could be located, U.S. Steel did not improperly address the elements or grounds of its claim or address the substantive considerations to be taken into

account in deciding the motions.  As a result, paragraph two does not constitute improper *ex parte* communication in violation of this Court's Appointment Order.  Furthermore, this Court does not find U.S. Steel's footnote stating, "Ms. Clickner committed to send you all of EEOC's pertinent filings.  As a result, U.S. Steel expects that the EEOC provided copies of all the materials referenced in these four bullet points.  Please let me know if they did not do so, and we will promptly provide you with copies of any missing materials" (Docket No. 154-4), to be an attack on EEOC's counsel.  Instead, that comment is an explanation as to why U.S. Steel did not enclose the referenced EEOC filings and an offer to supply said filings in the event that they had not been forthcoming from EEOC.  In this Court's estimation, EEOC's counsel reads too much into this footnote.

*Paragraphs Three and Four*:

Paragraphs three and four state the following.

> The Court held a telephonic conference regarding U.S. Steel's Motions on March 17, 2011.  *Citing EEOC v. LifeCare Management Services, Inc.*, 2009 WL 772834, Civ.Act.No. 10-1358 (W.D.Pa. Mar. 17, 2009), the Court expressed concern that if the Court reviewed the underlying documents and information enumerated above, that U.S. Steel contends are confidential and protected from disclosure, the Judge may be subject to recusal.  *See EEOC v. LifeCare Management Services, Inc.*, 2009 WL 772834 at *5.

> In responding to U.S. Steel's Motion for Expedited Relief, EEOC never contended that the underlying documents and information U.S. Steel identified are not of a type that would fall within the protections of 42 U.S.C. § 2000e-5(b).  Instead, in its briefs, EEOC argues that U.S. Steel waived said protections or otherwise consented to disclosure. Accordingly, U.S. Steel suggested at that March 17, 2011 Court conference that the parties stipulate that the underlying documents and information were, indeed, within the scope of 42 U.S.C. § 2000e-5(b) so that the Court could decide U.S. Steel's Motions without having to review the underlying documents and information.  At the March 17, 2011 Court conference, consistent with its position in its responsive briefing, EEOC did not dispute that the subject documents and information fell within the scope of the statute, and EEOC was amenable to entering a stipulation to

that effect.   Accordingly, the Court instructed the parties to set about negotiating a stipulation that would permit the Court to resolve U.S. Steel's Motions without reviewing the underlying documents and information.

(Docket No. 154-4).

EEOC maintains that the third paragraph suggests that because it did not agree with U.S. Steel's proposal, it is somehow "in the wrong" and makes EEOC appear unreasonable. (Docket No. 194 at p. 13, lns. 21-24).   Once again, in this Court's estimation, EEOC's counsel reads too much into U.S. Steel's missive.

EEOC next asserts that the fourth paragraph goes to the merits of the motions pending before the Special Master and inaccurately reflects EEOC's position during the Court's March 17, 2011 Conference.[21] (*Id.* at p.17, lns. 13-15).   In particular, EEOC notes that it was willing to negotiate a stipulation, but it never considered Exhibits 7 and 10 as part of the dispute because it was EEOC's understanding that the only documents at issue were Exhibits 8 and 9. (*Id.* at lns. 15-25).   These contentions lack merit.

Contrary to EEOC's assertions, paragraphs three and four recount the Court's March 17, 2011 Telephonic Conference with the parties and detail the procedural history which led to the appointment of the Special Master.   The same information can be found on the public docket, in this Court's Hearing Memo documenting the March 17, 2011 Telephonic Conference. (Docket No. 67) and the transcript of same (Docket No. 193).   Although EEOC appears to argue that U.S. Steel's statement:

> In responding to U.S. Steel's Motion for Expedited Relief, EEOC never contended that the underlying documents and information U.S. Steel

---

[21] EEOC did not detail its position during that conference. (*See* Docket No. 193).   However, U.S. Steel noted that it wanted to enter a stipulation regarding the documents described in its Motion For Expedited Relief. (Docket No. 193 at p. 14, lns. 22-25; p. 15, lns. 1-4).   Indeed, U.S. Steel's Motion for Expedited Relief, specifically referred to Exhibits 7 through 10 and pages 2, 22 and 23 of EEOC's Brief in Opposition to U.S. Steel's Motion to Dismiss and argued that all of those enumerated documents should be stricken from the record. (Docket No. 53).

> identified are not of a type that would fall within the protections of 42 U.S.C. § 2000e-5(b). Instead, in its briefs, EEOC argues that U.S. Steel waived said protections or otherwise consented to disclosure.

(Docket No. 154-4) addresses the merits of the motions pending before the Special Master, such is not the case. Instead, that statement sets out EEOC's counter-position to U.S. Steel's contentions and provides the reason why U.S. Steel suggested that the parties attempt to reach a stipulation, that the underlying documents and information were within the scope of 42 U.S.C. § 2000e-5(b), so that the Court could decide U.S. Steel's motions, without having to review the underlying documents and information.[22]  All of this is nothing more than procedural background information, not argument.

Furthermore, U.S. Steel does not misrepresent EEOC's position regarding stipulation negotiations. Instead, U. S. Steel's statements echo what EEOC filed as a "Stipulation" on the Court's docket. (*See* Docket No. 68). Although EEOC asserts that it only addressed Exhibits 8 and 9 in its responsive papers to U.S. Steel's motions because it did not know that Exhibits 7 and 10 were at issue, during the February 15, 2012 Hearing and Oral Argument, EEOC admitted that it discovered that Exhibits 7 through 10 were alleged to be confidential, when it received U.S. Steel's proposed stipulation, following the March 17, 2011 Court Conference (Docket No. 194 at p. 22, lns. 1-6), long before the Special Master began her work. Accordingly, EEOC's contention that it only addressed Exhibits 8 and 9, during the post March 17, 2011 stipulation negotiations, because it did not know that Exhibits 7 and 10 were at issue, is questionable, at best.

The above-referenced paragraphs do not improperly address the elements or grounds of U.S. Steel's claim or the substantive considerations to be taken into account in deciding its

---

[22] The Court did not want to run afoul of the *Lifecare* decision and thereby recuse, as did Judge McVerry. *See EEOC v. LifeCare Management Services, Inc.*, Civ. Act. No. 10-1358, 2009 WL 772834 (W.D.Pa. Mar. 17, 2009).

motions.  They provide procedural background.  As a result, paragraphs three and four do not

constitute improper *ex parte* communication in violation of this Court's Appointment Order.

> *Paragraphs Five and Six*:

Paragraphs five and six state the following.

> Subsequently, EEOC submitted to U.S. Steel a proposal that addressed
> only Exhibits 8 and 9 attached to Plaintiff EEOC's Brief in Opposition to
> Defendant U.S. Steel's Motion to Dismiss. *See* Mar. 17, 2011 E-mail from
> Deborah Kane, attached hereto as Exhibit A.  EEOC's proposal did not
> mention the remainder of the underlying documents and information
> identified in U.S. Steel's Motions, all of which, like Exhibits 8 and 9,
> reflect EEOC's "informal endeavors" to eliminate U.S. Steel's alleged
> unlawful employment practice under 42 U.S.C. § 2000e-5(b).  Thus, U.S.
> Steel submitted to EEOC on March 17, 2011 a counter-proposal that
> addressed all of the underlying documents and information that were
> identified in U.S. Steel's Motions as being at issue. *See* Mar. 17, 2011 E-
> Mail from Amy Dias and proposed stipulation, attached hereto as Exhibit
> B.
>
> Several days later, on March 21, 2011, EEOC responded that "EEOC does
> not agree with U.S. Steel's proposed stipulation that you forwarded on
> March 17, 2011," and offered no explanation and no counter-proposal. *See*
> Mar. 17, 2011 E-mail from Jean Clickner, attached hereto as exhibit C.
> Shortly thereafter and without any discussion with counsel for U.S. Steel,
> EEOC communicated to the Court that the parties were "at an impasse"
> (*See* Mar. 17, 2011 E-mail from Jean Clickner, attached hereto as Exhibit
> D) and filed with the Court a "Stipulation" to which U.S. Steel never
> agreed and which addressed only EEOC Exhibits 8 and 9 (*see* EEOC's
> Mar. 21, 2011 Stipulation (Dkt. No. 68), attached hereto as Exhibit E).  It
> is because the parties were unable to reach a joint stipulation regarding the
> nature of the underlying documents and information, as contemplated at
> the March 17, 2011 Court conference, that the Court has referred this
> matter to a special master for a recommended resolution.

(Docket No. 154-4).

EEOC argues that the fifth paragraph addresses the merits of the pending motions

because U.S. Steel had never argued that Exhibits 7 and 10 reflected EEOC's informal endeavors

to eliminate unlawful employment discrimination, prior to the letter at issue. (Docket No. 194 at

p. 32, lns. 16-22).  EEOC also asserts that the sixth paragraph casts aspersions on it. (*Id.* at p. 24, lns. 19-20).  These arguments likewise fail.

This Court reads paragraphs five and six as outlining the procedural history which led to the appointment of the Special Master.  These paragraphs do nothing more than describe the parties' attempts to reach a stipulation that the underlying documents and information were within the scope of 42 U.S.C. § 2000e-5(b), so that the Court could decide U.S. Steel's motions, without having to review the underlying documents and information.  To illustrate the parties' negotiations, U.S. Steel describes and attaches various written communications between the parties regarding same.  In these paragraphs, U.S. Steel expresses the fact that the parties disagreed, how they disagreed and were unable to reach a stipulation.  U.S. Steel does not advance any argument, but merely sets forth the dialogue which transpired between the parties and encloses supporting email exhibits.  The parties' attempts to reach a stipulation were not the subject of the Special Master's review.  Instead, the Special Master was to determine if it was procedurally improper for EEOC to attach proposed conciliation agreements and correspondence exchanged between the parties to its various Court filings because EEOC's representations therein contain information that EEOC is prohibited from disclosing by statute, specifically, 42 U.S.C. § 2000e-5(b). (Docket No. 76).

Although it could be argued that U.S. Steel's statement that the underlying documents and information "reflect EEOC's 'informal endeavors' to eliminate U.S. Steel's alleged unlawful employment practice under 42 U.S.C. § 2000e-5(b)"  (Docket No. 154-4) addresses the merits of the claim pending before the Special Master, again, such is not the case.  Instead, that statement merely identifies and does not support or argue the contention that is the basis for U.S. Steel's motions pending before the Special Master.  U.S. Steel's contention is that it was procedurally

improper for EEOC to attach proposed conciliation agreements and correspondence exchanged between the parties to its various Court filings because EEOC's representations therein contain information that EEOC is prohibited from disclosing by statute, specifically, 42 U.S.C. § 2000e-5(b). (Docket No. 76).  In fact, in its supporting brief (which went before the Special Master for review) U.S. Steel referenced the same "informal endeavors of the [EEOC] to eliminate unlawful employment practices." (Docket No. 54 at 7).

Once again, EEOC asserts that U.S. Steel had never argued that Exhibits 7 and 10 reflected EEOC's informal endeavors to eliminate unlawful employment discrimination, prior to the letter at issue. (Docket No. 194 at p. 9, lns. 1-17).  EEOC maintains that although U.S. Steel contended in its Motion for Expedited Relief that Exhibits 7 through 10 were conciliation documents, U.S. Steel never raised the assertion that those exhibits reflected EEOC's informal endeavors to eliminate unlawful employment discrimination. (Docket No. 155 at 6).  EEOC then argues that because U.S. Steel never made that assertion, prior to its statements in the letter, EEOC was denied the opportunity for rebuttal. (Docket No. 194 at p. 9, lns. 18-20).

Critically, EEOC's assertion that U.S. Steel had never argued that Exhibits 7 and 10 reflected EEOC's informal endeavors to eliminate unlawful employment discrimination, prior to the letter at issue, is factually inaccurate.  In U.S. Steel's Motion for Expedited Relief (which went before the Special Master for review), U.S. Steel specifically referred to Exhibits 7 through 10 and pages 2, 22 and 23 of EEOC's Brief in Opposition to U.S. Steel's Motion to Dismiss (which referred to those exhibits) and argued that all of those enumerated documents should be stricken from the record. (Docket No. 53).  Further, in its Brief in Support of its Motion for Expedited Relief (which went before the Special Master for review), U.S. Steel contended that the filing of Exhibits 7 through 10 violated a criminal provision of Title VII, 42 U.S.C. § 2000e-

5(b) and referred to them as reflecting EEOC's informal endeavors to eliminate unlawful employment practices. (Docket No. 54).

EEOC responded to U.S. Steel's motions in its Memorandum in Opposition to Defendant's Motion for Expedited Relief (Docket No. 57), Sur-Reply in Opposition to Defendant's Motion for Expedited Relief (Docket No. 63), Opposition to Defendant's Motion to Seal (Docket No. 66), and in its Response to Defendant's Supplemental Submission to the Special Master (Docket No. 114).  In particular, in its Response to Defendant's Supplemental Submission to the Special Master[23] (Docket No. 114), EEOC makes it clear to this Court that it understood that U.S. Steel challenged the filing of Exhibits 7 through 10;

> In its supplemental submission, Defendant complains of three alleged violations of Title VII's confidentiality provision (42 U.S.C. § 2000e-5(b)), beyond the subject of its separate motion for expedited relief.  In particular, Defendant claims that EEOC's disclosure of the Letter of Determination ("LOD") and the Notice of Conciliation Failure, and the oblique mention of the contents of the LOD in a footnote in EEOC's sur-reply regarding the motion to dismiss, all violate the confidentiality provision because they allegedly reflect what was said or done during or as part of conciliation.

(Docket No. 114 at 1).  During the February 15, 2012 Hearing and Oral Argument, EEOC claimed that it was not able to respond to the allegations regarding Exhibits 7 and 10 until it read the Special Master's Reports and Recommendations. (Docket No. 194 at p. 18, lns. 14-20).  Yet, in its Response to Defendant's Supplemental Submission to the Special Master, EEOC expressly acknowledges the fact that U.S. Steel is challenging Exhibits 7 and 10, as they were alleged to violate the confidentiality provision (42 U.S.C. § 2000e-5(b)) because they reflect portions of the

---

[23] On September 29, 2011, as part of its *de novo* review, the Court ordered U.S. Steel to file its Supplemental Submission Regarding EEOC's Violations of 42 U.S.C. 2000e-5(b) and ordered EEOC to file its Response to Defendant's Supplemental Submission to the Special Master.  Those supplemental submissions were initially reviewed by the Special Master in formulating her Report and Recommendation, but were not filed with the Court until September 30, 2011. (*See* Docket Nos. 114 and 117).

conciliation process. (Docket No. 114).  Then EEOC proceeds to counter U.S. Steel's arguments

concerning Exhibits 7 and 10. (*Id.*).  Hence, EEOC's contention that it was denied an opportunity

for rebuttal, is wholly lacking in merit.[24]

By merely supplying the Special Master with background information related to its

motions pending before her, U.S. Steel did not improperly address the elements or grounds of its

claim or address the substantive considerations to be taken into account in deciding the motions.

As a result, paragraphs five and six do not constitute improper *ex parte* communication in

violation of this Court's Appointment Order.

> *Paragraph 7*:

Paragraph seven states the following.

> Since the time of U.S. Steel's Motions, as I discussed at our April 7, 2011
> conference, EEOC violated 42 U.S.C. § 2000e-5(b) two more times: (1) in
> its sur-reply brief in opposition to U.S. Steel's Motion to Dismiss and; (2)
> in its Initial Disclosures.  Those violations will be the subject of U.S.
> Steel's supplemental memorandum that you directed be submitted to you
> on April 13, 2011.  In the meantime, if you have any questions, please let
> us know.

(Docket No. 154-4).

As noted, on April 7, 2011, the parties participated in a telephone conference with the

Special Master. (Docket Nos. 155 at 1 and 159 at 2).  Following the conference, the Special

Master sent an e-mail to counsel, setting out deadlines for submission of materials for her

review. (Docket No. 154-2).  In that email, the Special Master reported that U.S. Steel would

"submit an additional motion with supporting legal arguments concerning conciliation

---

[24] The Court also notes that U.S. Steel contended that the filing of Exhibits 7 through 10 violated a criminal
provision of Title VII, 42 U.S.C. § 2000e-5(b) because they reflect portions of the conciliation process. (Docket No.
53).  Regardless of which exhibits EEOC thought U.S. Steel was addressing, 42 U.S.C. § 2000e-5(b) protects
conciliation documents, which would have included any and all pertinent conciliation documents.

documents filed with the Court by the EEOC on or about March 25" by April 13, 2011; EEOC was to respond to same by April 25, 2011. (*Id.*).

Yet, EEOC asserts that the seventh paragraph goes to the merits of the motions pending before the Special Master. (Docket No. 194 at p. 32, lns. 23-25).   EEOC maintains that there was no specification during the April 7, 2011 conference call with the Special Master, as to how U.S. Steel believed that EEOC had once again violated Title VII. (*Id.* at p. 26, lns. 1-4).   The first time that U.S. Steel identifies additional violations is in the subject letter and EEOC had no opportunity for rebuttal, according to its argument. (*Id.* at lns. 4-7).   These assertions likewise lack merit.

In this Court's estimation, paragraph seven identifies the contention that will be the subject of U.S. Steel's forthcoming supplemental memorandum.   The Special Master testified that because her email addresses U.S. Steel's submission of an additional motion with supporting legal arguments concerning conciliation documents, it is evident that said supplemental memorandum was discussed during the parties' conference with the Special Master and was therefore known to be an additional subject for the Special Master's review. (*Id.* at p. 60, lns. 22-25; p. 61, lns. 1-2).   Significantly, during the February 15, 2012 Hearing and Oral Argument, Ms. Deborah Kane, counsel for EEOC, stated that during the conference call, she asked U.S. Steel to identify any additional violations and in response to her request, the Special Master directed U.S. Steel to identify them in its supplemental submission. (*Id.* at p. 64, lns. 17-20).   As a result, U.S. Steel followed the Special Master's instructions and identified the asserted violations in its cover letter and supplemental submission to the Special Master. (Docket Nos. 154-4 and 117). Further, in its Response to Defendant's Supplemental Submission to the Special Master, EEOC

replied to U.S. Steel's arguments concerning the alleged additional violations. (Docket No. 114). EEOC was not denied its opportunity for rebuttal.

As U.S. Steel only identifies and does not support or argue the contentions that serve as the basis for its forthcoming supplemental memorandum, it did not improperly address the elements or grounds of its claim or address the substantive considerations to be taken into account by the Special Master in deciding its motions. As such, paragraph seven does not constitute improper *ex parte* communication in violation of this Court's Appointment Order.

C. Analysis of U.S. Steel's April 11, 2011 Letter as New Evidence

EEOC further argues that U.S Steel's April 11, 2011 letter addressing the merits of the case constitutes new evidence that justifies reconsideration of this Court's Order adopting the Special Master's Supplemental Report and Recommendation. (Docket No. 155 at 1). "A motion for reconsideration relying on the discovery of new evidence subsequent to an initial order should only be granted if the party presenting the new evidence demonstrates that the new evidence would have changed the initial rulings." *Graham*, 2010 WL 3092684, at *2.

This Court's Order Appointing the Special Master stated that the Special Master and parties could communicate on an *ex parte* basis regarding matters which do not concern the merits of U.S. Steel's motions. (Docket No. 76). As previously discussed, that Order complied with Federal Rule of Civil Procedure 53(b)(2), the Code of Conduct for U.S. Judges and the Pennsylvania Rules of Professional Conduct. As thoroughly detailed and analyzed above, it is clearly evident that nothing in the letter improperly addresses the elements or grounds of U.S. Steel's claim or the substantive considerations to be taken into account in deciding U.S. Steel's Motion for Expedited Relief and Motion to Seal. Nothing in the letter gives U.S. Steel any procedural, substantive or tactical advantage. Accordingly, the letter does not constitute an

improper *ex parte* communication in violation of this Court's Order Appointing the Special Master.[25]   Given same, this Court has no reason to believe that the letter would cause an objective, reasonable layperson to question the Special Master's impartiality. *See* 28 U.S.C. § 455(a); *see also Linerboard Antitrust Litig.*, 2008 WL 2758167, at *6.

The letter does not constitute new evidence because it does not concern the merits of the matters then-pending before the Special Master.   Nor does it present any new argument or forward new evidence.   Instead, the letter details the procedural history that led to the Special Master's appointment and identifies the location of disputed documents and information.   It is also apparent that the letter parallels the discussion among all four counsel of record during the April 7, 2011 conference call with the Special Master.   Indeed, it is consistent with the credible testimony of the Special Master who testified that during said conference call, she asked them to describe the dispute, their contentions and the background of the case. (Docket No. 194 at p. 50, lns. 12-15).   She noted that the parties spoke at length about the conciliation documents and any references made to those documents. (*Id.* at p. 51, lns. 1-2).   Each party put forth its position. (*Id.* at lns. 10-20).   The Special Master also recalled that there was some discussion of procedural history and the parties referred to documents. (*Id.* at p. 52, lns. 14-18).

It is likewise apparent that the April 7, 2011 conference call encompassed a lengthy and substantive discussion of the issues. This fact is reflected in the detailed post-conference email[26] that the Special Master sent to counsel summarizing the contents of their telephone conference and the timing of that email.   The conference began at 10:00 A.M. and she sent her email at 10:48 A.M. (*Id.* at p. 60, lns. 15-21).   Moreover, the same is evident from the Special Master's and U.S. Steel's billing records.   In particular, the Special Master's billing record for the

---

[25] *See* discussion *supra* at Section V(B).
[26] *See* email reprinted at p. 7 *supra*.

conference call denotes a total time of 1.2 hours, which includes her time spent preparing for and attending the call; a telephone call with the Court's then judicial clerk regarding the deadlines Order; as well as her time spent emailing the parties. U.S. Steel's billing record for the conference call notes a total time of 2.5 hours, which includes time spent attending the call; a conference with co-counsel; conferences regarding projects to complete as a result of the conference call with the Special Master; as well as memos regarding same. (Docket No. 148). As such, it can be inferred that the call was at least thirty to forty-five minutes in length.  Given the Special Master's testimony, the timing of her email, as well as the billing records, the conference with the Special Master afforded counsel an opportunity to give an overview of the case and their arguments.  Therefore, it appears to this Court that the letter confirms at least part of the discussion among all four counsel of record during the conference call with the Special Master.

As previously discussed, EEOC asserts that U.S. Steel had never argued that Exhibits 7 and 10 reflected EEOC's informal endeavors to eliminate unlawful employment discrimination, prior to its letter, and as a consequence, EEOC was denied the opportunity for rebuttal. (Docket No. 194 at p. 9, lns. 1-17).  However, U.S. Steel did argue that Exhibits 7 through 10 reflected EEOC's informal endeavors to eliminate unlawful employment practices, prior to the contested correspondence, and EEOC was therefore not denied the opportunity for rebuttal. (Docket Nos. 53 and 54).  Because U.S. Steel did argue that Exhibits 7 through 10 reflected EEOC's informal endeavors to eliminate unlawful employment practices, prior to the issuance of its letter, the statement in the letter concerning Exhibits 7 through 10 does not constitute new evidence, as U.S. Steel was not raising a new contention, but was merely repeating the contention that was already the basis for its motions pending before the Special Master.

Most importantly, as to the present argument, the letter does not constitute new evidence that would change the Court's initial ruling in adopting the Special Master's Supplemental Report and Recommendation.  In fact, no grounds presently exist that would cause this Court to change its initial ruling. *See Graham*, 2010 WL 3092684, at *2.  Therefore, EEOC has failed to demonstrate that U.S. Steel's letter constitutes new evidence that justifies reconsideration of this Court's Order adopting the Special Master's Supplemental Report and Recommendation. Accordingly, EEOC's Motion for Reconsideration on the basis of new evidence is denied, with prejudice.

D.  Analysis of U.S. Steel's April 11, 2011 Letter as Manifest Injustice

EEOC next argues that U.S Steel's April 11, 2011 letter addressing the merits of the case causes a manifest injustice that justifies reconsideration of this Court's Order adopting the Special Master's Supplemental Report and Recommendation. (Docket No. 163 at 4; Docket No. 194 at p. 30, lns. 12-25).  When the basis of a motion for reconsideration is to correct a manifest injustice, the moving party must show that the underlying decision "was clearly wrong and that adherence to the decision would create a manifest injustice." *Payne*, 2006 WL 3590014, at *2; *see also Donaldson*, 2009 WL 5184380, at *1.  Manifest injustice is defined as "an error in the trial court that is direct, obvious and observable" or "an unjust state of affairs." BLACK'S LAW DICTIONARY (9th ed. 2009).  Injustice refers to "unfairness." (*Id.*).

EEOC asserts that U.S. Steel had never argued that Exhibits 7 and 10 reflected EEOC's informal endeavors to eliminate unlawful employment discrimination, prior to its letter, and as a consequence, EEOC was denied the opportunity to rebut same. (Docket No. 194 at p. 9, lns. 1-17).  However, this is factually inaccurate, as U.S. Steel challenged Exhibits 7 through 10 in its Motion for Expedited Relief (Docket No. 53) and in its supporting Brief (Docket No. 54).

Accordingly, EEOC was not denied the opportunity for rebuttal.  In fact, EEOC expressly acknowledged U.S. Steel's claims regarding Exhibits 7 and 10 and countered them in its Response to Defendant's Supplemental Submission to the Special Master. (Docket No. 114).  As EEOC was afforded the opportunity for rebuttal, no manifest injustice has been inflicted upon EEOC.

EEOC also argues that this Court's *de novo* review is tainted because this Court's Order adopts the Special Master's Supplemental Report and Recommendation, which was, in turn, tainted by the contested letter. (Docket No. 194 at p. 44, lns. 1-4).  EEOC maintains that *In re: Kensington Int'l Ltd.*, 368 F.3d 289 (3d Cir. 2004), supports its argument because therein the Third Circuit held that a judge could not separate himself from improper *ex parte* communications and independently consider the issues in the case. (*Id.* at lns. 5-10).  This Court disagrees.

In *Kensington*, a district judge presided over asbestos-related bankruptcy cases and appointed attorney advisors to inform him about related issues. *Kensington*, 368 F.3d at 297. Two of the advisors represented potential asbestos personal injury claimants in an unrelated asbestos-related bankruptcy proceeding and espoused views therein on the same disputed issues that were central to the *Kensington* case. *Id.* at 304.  As a result, those two advisors had conflicts of interest and were not truly disinterested in the outcome of the *Kensington* proceedings. *Id.* at 305.  In addition, the judge met with the two attorney advisors several times and engaged in numerous *ex parte* communications (concerning the merits) with them to manage the complex litigation. *Id.* at 297-98.  During the *ex parte* meetings, the advisors were in a position to influence the judge without challenge from the parties. *Id.* at 311.  The Third Circuit determined that the advisors' conflicts of interest and the judge's *ex parte* meetings with them, would cause

an objective, reasonable layperson to conclude that the advisors tainted the judge and required the judge's recusal. *Id.* at 309.

As detailed in this Court's September 30, 2011 Memorandum Order adopting the Special Master's Supplemental Report and Recommendation, this Court conducted an independent *de novo* review of the record, in addressing the initial and supplemental Special Master's Reports and Recommendations, including U.S. Steel's "Supplemental Submission Regarding EEOC's Violations of 42 U.S.C. § 2000e-5(b)", EEOC's "Response to Defendant's Supplemental Submission to Special Master", the objections and responses thereto. (Docket No. 118). In performing its *de novo* review, the Court also reviewed all of the case law cited in the pertinent filings and conducted its own research and analysis of the issues. (*Id.*). The Court reached its own conclusions. As the Special Master's Supplemental Report and Recommendation meshed with the Court's opinion, the Court adopted same. (*Id.*).

Accordingly, *Kensington* is not controlling here for the following reasons. First, in *Kensington*, the judge met with his two attorney advisors (who possessed conflicts of interest) on several occasions regarding the merits of the case. *Kensington,* 368 F.3d at 297-98. Here, there is no argument that the Special Master had a conflict of interest. In fact, the parties voluntarily selected Ms. Cimini to serve as their Special Master. (Docket No. 75). Ms. Cimini was not previous counsel for either EEOC or U.S. Steel, nor to any party aligned with them. Ms. Cimini has no relationship with the counsel of record. Second, this Court did not discuss the merits of this case with the Special Master at any time. This Court only had one contact with the Special Master when she telephoned the Court regarding the fact that she had made transcription errors in her Report and Recommendation and she sought permission to refile her Report and

Recommendation.[27]  That contact did not concern the merits of the motions pending before her. *See In Re: Phillip A. Brooks*, 383 F.3d 1036 (D.C. Cir. 2004) (finding judicial recusal unnecessary where a judge's *ex parte* contacts with Special Masters did not give the judge personal knowledge of disputed evidentiary facts.).  Instead, like counsel to the parties, this Court only received and reviewed the Special Master's opinions in her filed Reports and Recommendations.

Further, the Court did not review or even have access to U.S. Steel's letter during its *de novo* review, yet came to the same conclusion as the Special Master.  This serves as additional evidence that the Special Master was not tainted by the letter.[28]  Accordingly, there is no basis upon which an objective, reasonable layperson could conclude that this Court was tainted in its *de novo* review of the Special Master's Supplemental Report and Recommendation. *See,* 28 U.S.C. § 455(a); *see also Linerboard Antitrust Litig.*, 2008 WL 2758167, at *6.

As such, there is no reason to recuse the Special Master in order for another Special Master and/or the Court to conduct another independent *de novo* review.  The Court is also mindful of Rule 1 of the Federal Rules of Civil Procedure, which requires the Federal Rules to "be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. To order another *de novo* review would not only be redundant and unnecessary, it would be time consuming, costly and would lead to further delay, prejudicing all of the parties to this litigation in terms of time and expense.

Based on the foregoing, EEOC has not shown that the underlying decision "was clearly wrong and that adherence to the decision would create a manifest injustice." *Payne*, 2006 WL

---

[27] *See* Docket No. 89 (Court remanded the matter to the Special Master because of the parties' responses to the Special Master's Report and Recommendation, arguing that the Special Master relied on incorrect legal analysis, was internally inconsistent and made recommendations beyond or not supported by legal authority.).

[28] In her February 10, 2012 Affidavit, the Special Master states that she does not recall reading or using either party's cover letter in formulating her Report and Recommendation. (Docket No. 182).

3590014, at *2; *see also Donaldson,* 2009 WL 5184380, at *1.  Because the letter is not an

improper *ex parte* communication in violation of this Court's Appointment Order, does not

present any new argument or evidence and does not give U.S. Steel any procedural, tactical, or

substantive advantage, it would not cause an objective, reasonable layperson to believe that the

Special Master's impartiality or her Reports and Recommendations had been tainted. *See* 28

U.S.C. § 455(a); *see also Linerboard Antitrust Litig.*, 2008 WL 2758167, at *6.  Given same, an

objective, reasonable layperson would not consider this Court's independent *de novo* review of

the record to be tainted by the Special Master's Reports and Recommendations.   In addition,

EEOC was not denied any opportunity for rebuttal.   Therefore, EEOC has failed to demonstrate

that U.S. Steel's letter, or the Special Master's Reports and Recommendations, create any

manifest injustice, which justifies reconsideration of this Court's Order adopting the Special

Master's Supplemental Report and Recommendation.    Accordingly, EEOC's Motion for

Reconsideration on the basis of manifest injustice is denied, with prejudice.


## VII.    RELATED MOTIONS

In light of the denial of EEOC's Motion for Reconsideration (Docket No. 154), this Court

denies its related motions.

### 1.  Motion for Suppression of the Special Master's Reports and Recommendations

EEOC's Motion for Suppression of the Special Master's Reports and Recommendations

(*Id.*) is denied, with prejudice, because the letter is not an improper *ex parte* communication in

violation of this Court's Appointment Order, does not present any new argument or evidence and

does not give U.S. Steel any procedural, tactical, or substantive advantage.   Thus, it would not

cause an objective, reasonable layperson to believe that the Special Master's impartiality or her

Reports and Recommendations had been tainted. *See* 28 U.S.C. § 455(a); *see also Linerboard Antitrust Litig.*, 2008 WL 2758167, at *6.

2.  <u>Motion for Recusal of the Special Master</u>

Similarly, EEOC's Motion for Recusal of the Special Master (Docket No. 154) is denied, with prejudice, as the Court has determined that there is no basis on which an objective, reasonable layperson could conclude that this Court was tainted in its *de novo* review of the Special Master's Supplemental Report and Recommendation.  As there is no basis on which an objective, reasonable layperson could conclude that this Court was tainted in its *de novo* review of the Special Master's Supplemental Report and Recommendation, there is no reason to recuse the Special Master in order for another Special Master and/or the Court to conduct another independent *de novo* review.  Furthermore,  to order another *de novo* review would not only be redundant and unnecessary, it would be time consuming, costly and would lead to further delay, prejudicing all of the parties to this litigation in terms of time and expense.

3.  <u>Motion for Sanctions</u>

Moreover, EEOC's Motion for Sanctions (*Id.*) is denied, with prejudice, as this Court has upheld the conduct of U.S. Steel.  Because the letter is not an improper *ex parte* communication in violation of this Court's Appointment Order, does not present any new argument or evidence and does not give U.S. Steel any procedural, tactical, or substantive advantage, sanctions against U.S. Steel are not warranted.


**VIII.  CONCLUSION**

EEOC's Motion for Reconsideration is DENIED, with prejudice.  Likewise, EEOC's Motions for Suppression of the Special Master's Reports and Recommendations, Recusal of the Special Master, and Sanctions are DENIED, with prejudice.  The Court's adoption of the Special

Master's Supplemental Report and Recommendation (Docket No. 118) stands.   An appropriate

Order follows.

> *s/ Nora Barry Fischer*
> Nora Barry Fischer
> U.S. District Judge

cc/ecf:  All counsel of record
Date: April 5, 2012