**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) ) | Civil Action No. 10-1284 Judge Nora Barry Fischer |
| | ) | |
| UNITED STATES STEEL CORPORATION; | ) | |
| UNITED STEEL, PAPER & FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL, AND SERVICE | ) | |
| WORKERS INTERNATIONAL UNION | ) | |
| AFL-CIO, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Equal Employment Opportunity Commission ("EEOC") initiated this Americans with Disabilities Act action as a potential class action on behalf of charging party Abigail DeSimone ("DeSimone")[1] and all similarly situated employees of Defendant U.S. Steel ("U.S. Steel").  Pending before the Court are U.S. Steel's Motions for Attorneys' Fees and Costs. (Docket Nos. 119; 146). After considering the motions, briefs, and the exhibits submitted by the parties, as well as the parties' arguments presented at the hearings held on November 8, 2011 and April 25, 2012, the Court denies U.S. Steel's motions, without prejudice, as premature and lacking evidentiary support, given the present record.

---

[1] Ms. DeSimone has since settled her individual case. (Docket No. 192).

I.       Factual and Procedural Background

The litigation of this case has been lengthy and more than contentious as a result of the EEOC's March 1, 2011 filing (Docket No. 49) of confidential conciliation documents in support of its opposition to U.S. Steel's Motion to Dismiss EEOC's Amended Complaint (Docket No. 23).   As a consequence of EEOC filing the confidential documents, U.S. Steel filed a Motion for Expedited Relief on March 4, 2011, wherein it argued that it was procedurally improper for EEOC to attach proposed conciliation agreements and correspondence exchanged between the parties to its Response to Defendant U.S. Steel's Motion to Dismiss. (Docket No. 53).   In response to U.S. Steel's Motion for Expedited Relief, on March 7, 2011, EEOC filed a Motion to Seal its Response to Defendant U.S. Steel's Motion to Dismiss (Docket No. 55), which the Court granted that same day (Docket No. 56). Despite this, on March 8 and 9, 2011, EEOC filed its Response (Docket No. 57) and Sur-Reply (Docket No. 63), respectively, in opposition to U.S. Steel's Motion for Expedited Relief, wherein it described what allegedly occurred during conciliation.   The next day, on March 10, 2011, U.S. Steel filed a Motion to Seal requesting that the Court seal EEOC's Response and Sur-reply to Defendant U.S. Steel's Motion for Expedited Relief arguing that EEOC's representations therein contain information that EEOC is prohibited from disclosing by statute, specifically citing 42 U.S.C. § 2000e-5(b). (Docket No. 64).   Thereafter, on March 15, 2011, EEOC served on all parties its initial disclosures, which included copies of the disputed documents. (Docket No. 82).   Then again, EEOC referenced confidential conciliation information in its March 24, 2011 Sur-Reply in Opposition to U.S. Steel's Motion to Dismiss. (Docket No. 71).

Given these filings and submissions, this Court convened a Telephonic Status Conference on March 17, 2011. (Docket No. 67).   During the conference, counsel for U.S. Steel suggested that the parties stipulate to the contents of the documents at issue and informed the Court that it would draft a proposed stipulation to share with EEOC. (*Id.*).   The Court then directed EEOC to notify the Court as

to whether a stipulation had been reached. (*Id.*).  On March 21, 2011, EEOC filed its "Stipulation,"[2] wherein it stated that the parties had not reached an agreement on the stipulation's content. (Docket No. 68).  Instead, EEOC asserted that the Court could rule on U.S. Steel's Motion for Expedited Relief without considering Exhibits 8 and 9. (*Id.*).  Just three days later, on March 24, 2011, EEOC filed its Sur-Reply Brief in Opposition to U.S. Steel's Motion to Dismiss, wherein the EEOC commented on the content of the conciliation proceedings again. (Docket No. 71).

In light of the above circumstances and a decision of this Court, *EEOC v. LifeCare Management Services, Inc.*, Civ. Act. No. 10-1358, 2009 WL 772834 (W.D. Pa. Mar. 17, 2009), in which Judge McVerry found that he must recuse himself after viewing proposed conciliation agreements and correspondence exchanged between the parties, this Court entered an Order, with agreement of counsel. (Docket No. 76).  In this Order, the Court referred consideration of U.S. Steel's Motion for Expedited Relief and Motion to Seal to Special Master Sally Cimini, Esquire. (*Id.*).[3]  Given this referral, the Court postponed any further action on U.S. Steel's outstanding Motion to Dismiss (Docket No. 23) pending resolution of U.S. Steel's Motion for Expedited Relief and Motion to Seal. (Docket No. 79).

After additional briefing,[4] the Special Master filed her Report and Recommendation on May 29, 2011 and her Supplemental Report and Recommendation on September 1, 2011. (Docket Nos. 82; 103).  The Special Master recommended awarding U.S. Steel attorneys' fees and costs in presenting its Motion for Expedited Relief and "the subsequent motions and briefs in this matter," pursuant to 42 U.S.C. § 2000e-5(k). (Docket No. 103).  Upon consideration and independent review of the record *de*

---

[2] A stipulation is defined as "a voluntary agreement between opposing parties concerning some relevant point."  BLACK'S LAW DICTIONARY (9th ed. 2009).  Here, however, the document that EEOC filed did not constitute a stipulation because the parties did not reach an agreement. (Docket No. 68).

[3] Sally Griffith Cimini, Esquire is highly regarded for her experience in the areas of employment law (over 25 years of experience) and alternative dispute resolution.  She is a partner at Leech Tishman and chairs the firm's Alternative Dispute Resolution and Employment Practice Groups.  She actively participates as a Neutral in the Alternative Dispute Resolution Program for the United States District Court for the Western District of Pennsylvania.  She is also a frequent trainer, panelist and seminar participant in the areas of employment law and alternative dispute resolution.

[4] Counsel and Ms. Cimini also conferred about the issues that she was to address in her Report and Recommendation.  (*See* Docket No. 197).  However, there are no transcripts from these proceedings. *Id.*

*novo*, particularly the initial and supplemental Special Master's Reports and Recommendations, the objections and responses thereto, and case law and authority cited therein as well as this Court's independent research, this Court entered a Memorandum Order on September 30, 2011, in which it concluded that EEOC violated Section 2000e-5(b) and sealed the contested filings.  In addition, the Court's Order stated "this Court will award to U.S. Steel reasonable attorney's fees and costs in presenting its Motion for Expedited Relief (Docket No. [53]) and the subsequent motions and briefs in this matter." (Docket No. 118).[5]

U.S. Steel filed its Motion for Attorneys' Fees and Costs on October 14, 2011. (Docket No. 119) and on November 3, 2011, EEOC filed its objections to same (Docket No. 139).  Five days later, on November 8, 2011, the Court conducted a hearing[6] and heard argument on the motion. (Docket No. 141).  During the hearing, U.S. Steel requested leave to file a response to EEOC's objections to its motion and the Court granted same. (Docket No. 142).  Thereafter, on November 18, 2011, U.S. Steel filed its Supplemental Motion for Attorneys' Fees and Costs (Docket No. 146), to which EEOC responded on December 6, 2011 (Docket No. 150).  On that same day, however, EEOC also filed a Motion for Reconsideration (Docket No. 154) arguing that the Court's Order adopting the Special Master's Supplemental Report and Recommendation (Docket No. 118) should be reconsidered because U.S. Steel allegedly submitted an *ex parte* letter to the Special Master addressing the merits of the matters pending before her and thereby allegedly tainted both the Special Master's recommendations

---

[5] This Court has inherent authority to interpret its own orders. *See, e.g. United States v. Spallone*, 399 F.3d 415, 421 (2nd Cir. 2005); *see also SEC v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988) ("Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order.").  In stating that it would award U.S. Steel "reasonable attorney's fees and costs in presenting its Motion for Expedited Relief (Docket No. [53]) and the subsequent motions and briefs in this matter" (Docket No. 118), the Court contemplated motion practice to determine same.  EEOC emphasizes the Special Master's reliance on 42 U.S.C. § 2000e-5(k) in rationalizing an award of attorneys' fees and costs. (Docket No. 139).  EEOC also asserts that this Court's Order adopting the Special Master's Supplemental Report and Recommendation (Docket Nos. 118; 139) implies that 42 U.S.C. § 2000e-5(k) served as the basis for this Court's Order granting U.S. Steel the opportunity to seek attorneys' fees and costs. *Id.*  However, although this Court awarded U.S. Steel the opportunity to seek reasonable attorneys' fees and costs in addressing EEOC's misconduct (Docket No. 118), the Court's Order did not specify the basis for same.  Accordingly, the Court will consider all of the bases argued before the Special Master and this Court, including 42 U.S.C. § 2000e-5(k), 28 U.S.C. § 1927 and the Court's inherent authority. (*See* Docket Nos. 85; 88; 111; 113; 139; 147; 148; 150; 153; 157).
[6] Counsel did not present evidence at the hearing. (*See* Docket No. 141).

4

and this Court's Order adopting same. (Docket No. 155 at 1; Docket No. 163 at 4; Docket No. 194 at p. 30, lns. 12-25).

As a result, this Court postponed any further hearing or argument regarding U.S. Steel's Motion for Attorneys' Fees and Costs, pending resolution of the Motion for Reconsideration. (Docket No. 158). On April 5, 2012, the Court issued its Opinion denying EEOC's Motion for Reconsideration. (Docket No. 197). That same day, the Court scheduled Hearing and Oral Argument on U.S. Steel's Motions for Attorneys' Fees and Costs. (Docket No. 198). The parties presented oral argument at the April 25, 2012 Motion Hearing (Docket No. 201),[7] relying on affidavits and other evidence submitted in conjunction with the Motions and opposition to same (*See* Docket Nos. 119; 139; 147; 148; 150; 153; 157). The transcript from said Motion Hearing has now been filed of record. (Docket No. 209). As this matter is fully briefed (*See* Docket Nos. 85; 88; 111; 113; 139; 147; 148; 150; 153; 157) and the Court has had an opportunity to review the transcript, it is ripe for disposition. Accordingly, the Court now turns to its summary of U.S. Steel's Motions for Attorneys' Fees and Costs and EEOC's arguments in opposition to same.

II.    Overview of U.S. Steel's Motions and EEOC's Objections

a.    U.S. Steel

In total, U.S. Steel requests that this Court grant it $92,414.19 in fees and costs resulting from EEOC's violation of Section 2000e-5(b), pursuant to 42 U.S.C. § 2000e-5(k), 28 U.S.C. § 1927 and the Court's inherent authority. (Docket Nos. 88; 113; 146). Specifically, U.S. Steel is seeking $69,142.50 in attorneys' fees; the Special Master's costs and expenses totaling $12,831.59; $3,116.35 in costs and expenses; paralegal fees totaling $2,913.75; and the attorneys' fees incurred subsequent to U.S. Steel's

---

[7] The Court purposefully set a Hearing on the Motions for Attorneys' Fees and Costs in order to give the parties the opportunity to present evidence including testimony. At the outset of said Hearing, the Court specifically asked counsel if they intended to introduce any further evidence in support of their arguments, and they both responded in the negative. (Docket No. 209 at p. 3, lns. 12-17).

original Motion for Attorneys' Fees and Costs totaling $4,410.00. (Docket No. 146 at ¶ 6). Moreover, U.S. Steel asserts that the hours claimed and the hourly rates charged by its counsel are reasonable. (Docket No. 147). In support of Jones Day's hourly rates, U.S. Steel argues that this case is complex as it involves a proposed nationwide class action consisting of several U.S. Steel sites, including present and past employees. (Docket No. 147 at 2). U.S. Steel further asserts that *Vallies v. SkyBank*, No. 2:01 cv 1438, 2011 WL 4527312 (W.D. Pa. Sept. 28, 2011), supports the requested hourly rates as this District has found $540 per hour to be a reasonable attorney hourly rate. *Id.* U.S. Steel also relies on counsel's billing records (Docket No. 148), as well as the declarations of Amy Dias[8] (Docket Nos. 119-1; 146-1) and Douglas Campbell[9] (Docket No. 147-1), in support of its request for attorneys' fees and costs.

   b.  EEOC

EEOC raises the following arguments in opposition. EEOC first reiterates its position that any award of attorneys' fees is not statutorily supportable under 42 U.S.C. § 2000e-5(k) (Docket Nos. 85; 111; 139). Second, EEOC argues that U.S. Steel is not entitled to attorneys' fees and costs under 28 U.S.C. § 1927 nor the Court's inherent authority (Docket Nos. 111; 139). Third, EEOC contends that U.S. Steel does not provide requisite evidence in support of its motions and thus does not create a *prima facie* right to reimbursement. (Docket Nos. 139 at 4; 153 at 4). Fourth, EEOC maintains that U.S. Steel waived its right to seek paralegal fees and other costs and expenses (Docket No. 153 at 3) and that the request for the reimbursement of the Special Master's costs exceeds and contravenes this Court's orders[10] (*Id.* at 19). Fifth, EEOC asserts that the total fee award should be a small fraction of

---

[8] Amy Dias, Esq. is counsel of record for U.S. Steel and is a partner at Jones Day. Her practice focuses on complex employment litigation. She received her law degree from the University of Pittsburgh School of Law in 1988.

[9] Douglas Campbell, Esq. is a partner at Campbell & Levine, LLC, and his practice focuses on bankruptcy. He received his law degree from Harvard Law School in 1976.

[10] The Court notes that its Order Appointing the Special Master did not contain a fee shifting provision regarding the Special Master's fees and costs. (*See* Docket No. 76). *See Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465, 473-474 (E.D. Pa. 2011) (costs awarded under fee-shifting statutes are limited to those that may be awarded under Section 1920). Moreover, in appointing the Special Master, the Court did not contemplate a fee shift, as the deployment of the Special

the fees requested because U.S. Steel has not achieved success on the merits of the case. (Docket No. 150 at 11).

Sixth, EEOC contends that the rates charged by counsel for U.S. Steel are inconsistent with those prevailing in the Western District of Pennsylvania. (Docket No. 139 at 9).  To that end, EEOC provided a declaration of Jon Pushinsky, Esq.[11] (Docket No. 139-1) and an affidavit of Maurice A. Nernberg, Esq.[12] (Docket No. 139-1).  EEOC also suggests that the Court consider the $350 hourly rate charged by the Special Master assigned in this case, Ms. Sally G. Cimini, Esq. (Docket No. 150). Finally, EEOC argues that the hours claimed are excessive, redundant or otherwise unnecessary. (Docket No. 139 at 12).


III.    Legal Standard

a.  42 U.S.C. § 2000e-5(k)

The parties do not dispute that, under Title VII, a prevailing party is entitled to seek reasonable attorney's fees and costs.  42 U.S.C. § 2000e-5(k), which is Title VII's attorney fee provision, states:

> In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

---

Master was required, in part, due to unwillingness on the part of the parties and their counsel to reach an agreement on disputed documents.  It was the Court's thought that both parties and counsel could benefit both by Special Master Cimini's mediation skills, as well as her substantive knowledge.

[11]  Jon Pushinsky, Esq. is a solo practitioner and is married to former counsel of record for EEOC, Jean Clickner, Esq.  He has over thirty years of experience in general practice, with a focus on civil rights and appellate litigation. (Docket No. 139-1).  He has frequently appeared before this Court in civil rights cases.

[12]  Maurice Nernberg, Esq. is a partner at Maurice A. Nernberg & Associates, focusing on civil litigation. He received his law degree from the University of Pittsburgh School of Law in 1964. (Docket No. 139-1).  He has also appeared before this Court in commercial cases.

42 U.S.C. § 2000e-5(k). "[T]he standards for assessing claims for attorney's fees pursuant to section 1988 and under […] 42 U.S.C. § 2000e-5(k) are identical."[13] *Adams v. Teamsters Local 115*, 678 F.Supp.2d 314, 319 at n. 2 (E.D.Pa. 2007). However, key to this Court's determination regarding a potential award of attorneys' fees and costs is the question of whether U.S. Steel has prevailed at this juncture. Hence, the Court turns first to the standard for a prevailing party.

A "prevailing party" is a party that has "[succeeded] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). The Supreme Court refined the test for "prevailing party" in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), when it ruled that a party must receive "at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 603. A party must not only achieve some "material alteration of the legal relationship of the parties," but that change must also be judicially sanctioned. *Id.* at 605. Likewise, an

---

[13] A prevailing party is not automatically entitled to compensation for attorney's fees in their entirety; rather the party seeking such attorney's fees bears the burden to prove the reasonableness of its request. *Interfaith Cmty. Org. v. Honeywell,* 426 F.3d 694, 711 (3d Cir. 2005); *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990). Therefore, the amount of the attorney's fees, if any, to be awarded must turn on the facts in each case, and the district court should determine what fee is reasonable, i.e. "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.,* --- U.S. ----, 130 S.Ct. 1662, 1672 (2010). The Supreme Court in *Blum v. Stenson,* 465 U.S. 886 (1984), recognized that the initial estimate for attorney's fees is obtained by multiplying a reasonable hourly rate by a reasonable number of hours expended in the litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This formula, often referred to as the "lodestar," serves as an objective basis to make an initial assessment of the "value of the lawyer's services." *Id.* The United States Court of Appeals for the Third Circuit has adopted the community market rate rule to determine the lodestar. *Student Pub. Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1448 (3d Cir.1988). This rule requires the court to "assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private business sphere." *Id.* at 1447. Although the Court will not reach a determination of fees and costs at this stage, the Court questions the reasonableness of U.S. Steel's requested attorneys' fees and costs, as upon initial review, the hours and rates claimed do appear to be excessive. There also appears to be redundancy in the hours claimed for the described tasks. (*See* Docket No. 148). Further, to this Judge's knowledge, no courts within this District have awarded more than $540 per hour as a reasonable rate. *See Vallies v. SkyBank, supra*. In addition, U.S. Steel conceded some of EEOC's objections. (Docket No. 209 at p. 18, lns. 19-21; p. 20, lns. 16-17; p. 24, ln. 14). The Court acknowledges that if the opposing party makes specific objections to the attorney's fees, a court must "go line by line through the billing records." *Evans v. Port Authority of New York and New Jersey,* 273 F.3d 346, 362 (3d Cir. 2001). The court must then "exclude those [hours] that are excessive, redundant or otherwise unnecessary." *Interfaith Cmty. Org.,* 426 F.3d at 711. However, the Court defers its undertaking of such an analysis at this time as the Motions for Attorneys' Fees and Costs are premature and lacking evidentiary support, based upon the present record.

interim award is available "only when a party has prevailed on the merits of at least some of his claims." *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (citing *Hanrahan v. Hampton,* 446 U.S. 754, 757-58 (1980)).

The term "merits" is defined as "the elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp[ecially] of procedure." BLACK'S LAW DICTIONARY (9th ed. 2009).  With respect to attorneys' fees and costs, courts have routinely held that the term "merits" refers to a determination on an issue that is fundamental to the underlying lawsuit. *See Hygienics Direct Co. v. Medline Indus., Inc.*, 33 F. App'x 621, 625 (3d Cir. 2002) (stating that "a defendant cannot be considered a 'prevailing party' when a complaint is dismissed for lack of jurisdiction because the defendant has not prevailed over the plaintiff on any issue that is fundamental to the action."); *see also J.O.*, 287 F.3d at 273 (upholding the district court's characterization of the "ALJ's order to reinstate C.O. as a temporary placement of C.O. in school pending further proceedings, [as] analogous to a stay-put order, that did not affect the merits of C.O.'s permanent educational placement.").

Under 42 U.S.C. § 2000e-5(k), the Court "may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).  The phrase "as part of the costs" means that the attorney's fee may be imposed "as an additional component of the traditional costs taxed by the court pursuant to 28 U.S.C. § 1920." *Oates v. Oates*, 866 F.2d 203, 207 (6th Cir. 1989).  28 U.S.C. § 1920[14] defines costs and

---

[14] 28 U.S.C. § 1920 provides that :

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

Federal Rule of Civil Procedure 54[15] governs the award of costs in cases brought in federal court. *See* 28 U.S.C. § 1920; FED. R. CIV. P. 54.   Federal Rule of Civil Procedure 54 permits claims for costs when a court has entered "a decree [or] any order from which an appeal lies." FED. R. CIV. P. 54.[16]  An appeal arises from a final judgment. *See* 28 U.S.C. § 1291.[17]  "Section 1291 defines a final judgment as a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *eds Adjusters, Inc. v. Computer Scis. Corp.*, 149 F.R.D. 86, 88 (E.D. Pa. 1993) (citing *Lauro Lines, S.R.L. v. Chasser,* 490 U.S. 495, 497 (1989)).

Furthermore, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *see also Weisberg v. Riverside Tp. Bd. of Educ.*, 272 F. App'x 170, 173 (3d Cir. 2008).  Several courts, including the United States Court of Appeals for the Third Circuit, have noted that the term "action," as referenced in the aforementioned standard for awarding attorney's fees to defendants, refers to the underlying lawsuit itself; it does not refer to individual actions or conduct committed during the pendency of a lawsuit. *See e.g. Barnes Found. v. Lower Merion*, 242

---

> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

[15] Federal Rule of Civil Procedure 54 provides that: "'judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings." FED. R. CIV. P. 54(a).

[16] The Western District of Pennsylvania's Local Rule of Court regarding costs mirrors Federal Rule of Civil Procedure 54. *See* W.D. Pa. L.Cv.R. 54.

[17] 28 U.S.C. § 1291 provides that:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

28 U.S.C. § 1291.

F.3d 151, 162-165 (3d Cir. 2001) (holding that, when summary judgment was properly granted to several defendants because of complete failure to produce any evidence as to essential component of plaintiff's case, the action was factually groundless, justifying attorney's fee award to prevailing defendant); *Knight v. Drye*, Civ. A. No. 07-3097, 2009 WL 2928899 (E.D. Pa. Sept. 9, 2009) (holding that plaintiff's equal protection conspiracy claim, which was the basis of the lawsuit, was groundless, and thus, defendants were entitled to an award of attorney's fees).

b. 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  "Section 1927 is a fee shifting statute which provides that attorneys may be liable for the excess costs, expenses and fees reasonably incurred because of such bad faith conduct." *Sutton v. American Fed'n of State, County and Mun. Workers, Local 1510*, Civ. A. No. 96-6065, 1997 WL 34663, at * 7 (E.D. Pa. Jan. 28, 1997).  It limits attorney sanctions to situations in which an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."  *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (quoting *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008)) (internal quotation marks omitted).  "[T]he principal purpose of sanctions under § 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings.'" *Id.* However, "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009).  Indeed, "[...], an attorney's conduct 'must be of an egregious nature, stamped by bad faith that is violative of recognized standards

in the conduct of litigation.'" *Id.*  Further, prior to sanctioning an attorney, a court must provide the party to be sanctioned with particularized notice of and some opportunity to respond to the charges. *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990).

    c. <u>Inherent Authority</u>

Federal courts possess the inherent power to impose sanctions by "assess[ing] attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)) (internal quotation marks omitted).  "The power extends to the regulation of attorneys as well." *Ferguson*, 454 F. App'x at 112.  As Judge Farnan noted in *In re Intel Corp. Microprocessor Antitrust Litig.*,

> When exercising discretion under its inherent sanction powers, a court is guided by the considerations set forth in the Federal Rules of Civil Procedure. *Westinghouse,* 43 F.3d at 74. Factors to consider include:
>
>   1. The nature and quality of the conduct at issue;
>   2. Whether the attorney or the client is responsible for the culpable conduct;
>   3. Whether there was a pattern of wrongdoing requiring a stiffer sanction;
>   4. The sanctioned party's ability to pay;
>   5. Whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and,
>   6. The existence of mitigating factors.
>
> *Id.* The Supreme Court also stated that this inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers,* 501 U.S. at 42, 111 S.Ct. 2123.

562 F. Supp. 2d 606, 611 (D. Del. 2008).

Critically, "a finding of bad faith is usually required before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Ferguson*, 454 F. App'x at 112. (quoting

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 181 & n.4, 189 (3d Cir. 2002)) (internal quotation marks omitted). Further, "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F.Supp.2d at 611 (quoting *Republic of Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74 (3d Cir. 1994)) (where district court adopted the report and recommendation of a special master finding a nonparty's actions demonstrated that it intentionally undertook dilatory conduct resulting in waste of time and increased costs).

IV.   Discussion

   a.  42 U.S.C. § 2000e-5(k)

   In light of the statutory language and the case law construing same, U.S. Steel cannot be deemed a prevailing party entitled to attorneys' fees and costs at this stage. *See e.g.* 42 U.S.C. § 2000e-5(k); *Hensley,* 461 U.S. at 433; *J.O.*, 287 F.3d at 273. As noted, an interim award is available "only when a party has prevailed on the merits of at least some of his claims." *J.O.*, 287 F.3d at 273. With respect to attorneys' fees and costs, courts have routinely held that the term "merits" refers to a determination on an issue that is fundamental to the underlying lawsuit. *See Hygienics*, 33 F. App'x at 625; *J.O.*, 287 F.3d at 273. In addition, costs are not awarded to a party until a court has entered a final judgment, which disposes of all issues in controversy. *See* FED. R. CIV. P. 54; *see also* 28 U.S.C. § 1291. Furthermore, a prevailing defendant may only be awarded attorney's fees when the plaintiff's underlying lawsuit "was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg*, 434 U.S. at 421; *see also Barnes Found.*, 242 F.3d at 162-165.

   Pertaining to the instant Motions, admittedly U.S. Steel has succeeded on its non-dispositive Motions for Expedited Relief (Docket No. 53) and to Seal (Docket No. 64). The Court found that

EEOC violated Section 2000e-5(b) and sealed the contested filings. (Docket No. 118).  Although the Court's Order sealing the contested filings cured that dispute, the relief U.S. Steel obtained did not, however, resolve the merits of the pending lawsuit, either in whole or in part.[18]  In fact, it remains to be seen whether EEOC or U.S. Steel will prevail on their respective claims and defenses.[19]  Further, there has not been any finding, to date, that EEOC's claims are frivolous, unreasonable, or without foundation.  In this regard, the Court first examines the nature of the lawsuit.

EEOC has set forth claims under Sections 706 and 707 of Title VII, alleging that U.S. Steel's random drug and alcohol testing of its probationary employees constitutes a medical test in violation of the Americans with Disabilities Act. (*See* Docket No. 3).  In response, U.S. Steel contends that EEOC's Amended Complaint should be dismissed because the alleged discrimination is premised on events occurring before August 10, 2007, which is 300 days before the charge that gave rise to the EEOC's lawsuit, and therefore is time-barred. (Docket No. 206 at 6-7). U.S. Steel also maintains that the EEOC's class claim should be dismissed, asserting that this claim which seeks relief for a class of presently unidentified aggrieved employees violates the EEOC's statutory pre-suit obligations to investigate, issue reasonable cause findings and conciliate its claims. (*Id.*).  In reply, EEOC maintains that it

> filed this suit to enforce an important provision of the Americans with Disabilities Act that prohibits employers from requiring employees to undergo medical examinations unless they are job related and consistent with business necessity.  In order to fulfill that role, […] EEOC is empowered to pursue remedies for all potential victims, even if they have not been previously identified by name through administrative procedures.  Furthermore, the scope of EEOC's remedies in class-wide pattern or

---

[18]  In an effort to meet this burden, during the April 25, 2012 Hearing, U.S. Steel's counsel argued that its Motion for Expedited Relief (Docket No. 53) and Motion to Seal (Docket No. 64) were akin to a motion for an injunction. (Docket No. 209 at p. 14, lns. 11-12).  Although obtaining an injunction can render prevailing party status, such status is only awarded in cases where the underlying lawsuit seeks permanent injunctive relief. *See e.g. Sole v. Wyner,* 551 U.S. 74, 86 (2007) (holding that interim awards of attorney's fees are inappropriate where the only relief obtained is a preliminary injunction, which may be subsequently overturned on the merits); *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (same); *Tarabour v. Twp. of Livingston*, 2011 WL 855312, at *4 (D.N.J. Mar. 9, 2011) (same).

[19]  U.S. Steel has renewed its Motion to Dismiss (Docket No. 205), EEOC has responded to same (Docket No. 213), in turn, U.S. Steel filed its Reply (Docket No. 216) and EEOC filed its Sur-Reply (Docket No. 217).  As this case is at the Motion to Dismiss stage, there has been no case management conference; initial disclosures; nor discovery, thus far.

> practice litigation is not restricted by the charge filing period that applies
> to the individual who filed the charge that triggered EEOC's
> administrative proceedings, and in any event Defendant's continuous
> application of an illegal policy, to the present day, allows EEOC to seek
> relief for all victims under the continuing violation doctrine.

(Docket No. 213 at 7).

Given EEOC's arguments, it appears to this Court that EEOC's lawsuit is not frivolous, unreasonable, or without foundation,[20] but it is too early to make such a determination. Indeed, a proper determination of frivolity, unreasonableness or lack of foundation must occur at the conclusion of the case. *See Barnes Found.*, 242 F.3d at 162-165; *see also Adams*, 678 F. Supp. 2d at 319 ("the court has noted that cases that were frivolous typically have been decided in the defendant's favor on a motion for summary judgment or a motion for involuntary dismissal."). Accordingly, as of this time, U.S. Steel is not entitled to attorneys' fees and costs under 42 U.S.C. § 2000e-5(k), as it is not yet a prevailing party, nor has it demonstrated that EEOC's underlying lawsuit is frivolous, unreasonable, or without foundation, despite the opportunity to do so at two separately scheduled hearings. The Court now turns to other potential bases of relief.

b. 28 U.S.C. § 1927 and Inherent Authority

As previously noted, a court may impose attorney's fees and costs as sanctions under Section 1927 and the Court's inherent authority. *See Ferguson*, 454 F. App'x at 112; *Chambers*, 501 U.S. at 45-46. In its September 30, 2011 Order, this Court determined that it "will not impose sanctions on EEOC for its violation of Section § 2000e-5(b)." (Docket No. 118).[21] Likewise, the Court will not now impose attorneys' fees on EEOC or its counsel as a sanction under Section 1927 or the Court's inherent authority. The Court explains its reasoning below, by first reviewing the pertinent facts.

---

[20] A frivolous claim is one without factual or legal basis. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991). The Court notes that former individual Plaintiff-Intervenor DeSimone and U.S. Steel settled her individual claim. (Docket No. 192). It would appear that U.S. Steel would not have been motivated to settle if her claim was entirely frivolous, unreasonable or without foundation.

[21] Sanctions are typically reserved for egregious conduct. *See Ferguson*, 454 F. App'x at 112.

In *EEOC v. LifeCare Management Services, Inc.*, 2009 WL 772834, at *4, Judge McVerry found that EEOC could not disclose and use as evidence conciliation-related materials without the written consent of a defendant and that Section 2000e-5(b) does not contain any at-issue waiver exception.  The same EEOC lawyer involved in the *LifeCare* case also disclosed and used as evidence conciliation-related materials without written consent, in the instant case. (Docket. No. 49).  Three days after the disclosure, U. S. Steel filed its Motion for Expedited Relief, wherein it asked the Court to strike from the record the documents improperly disclosed by EEOC, as well as pages in EEOC's brief referencing said documents, and to impose sanctions on EEOC and its attorneys. (Docket No. 53).  Then, despite U. S. Steel's Motion, EEOC again referenced confidential conciliation information three more times in its Brief in Opposition to Motion for Expedited Relief (Docket. No. 57), its Sur-Reply in Opposition to Motion for Expedited Relief (Docket. No. 63) and its Sur-Reply in Opposition to U.S. Steel's Motion to Dismiss (Docket No. 71) all over the span of seventeen days.

U.S. Steel argues that EEOC deliberately disregarded the holding in *LifeCare* by willfully and in bad faith disclosing confidential conciliation documents in violation of Section 2000e-5(b). (Docket No. 111 at 15).[22]  U.S. Steel further maintains that EEOC then vexatiously multiplied the proceedings by again violating Section 2000e-5(b), after U.S. Steel objected and by advancing the same frivolous waiver argument that it maintains *LifeCare* foreclosed. *Id.*

In response, EEOC explains that it referenced the conciliation documents because U.S. Steel had alleged that EEOC failed to exhaust administrative remedies. (Docket No. 57 at 2).  EEOC also asserts that it is clear from the extensive briefing, the appointment of a Special Master, and the lack of controlling authority that EEOC's position (in relying on the conciliation documents) is neither frivolous, unreasonable, nor without foundation. (Docket No. 111 at 28).  EEOC notes that there is a lack of case law on the issues of implied waiver and whether the Letter of Determination and Notice of

---

[22] As all filings are submitted by electronic means and are available to the public, U.S. Steel was concerned with the public nature of EEOC's filing. (Docket No. 54 at 2).

Conciliation Failure are confidential. (Docket No. 209 at p. 34, lns. 19-25).  Hence, it wanted to bring those issues to various Courts to elicit rulings on same. *Id.*[23]   Additionally, EEOC's counsel thought that they had found a case with similar facts that supported its waiver argument. (Docket No. 111 at 29).   EEOC was not dissuaded from referencing conciliation documents by the *LifeCare* decision because it believed that said decision was not binding on this Court. (Docket No. 209 at p. 31, lns. 4-11). Finally, EEOC maintains that it did not stop referencing the contested documents upon U.S. Steel's objection because it "believed with reasonable belief that it had not done anything wrong." (*Id.* at p. 30-31, lns. 25-1).

As noted, "Section 1927 is a fee shifting statute which provides that attorneys may be liable for the excess costs, expenses and fees reasonably incurred because of [...] bad faith conduct." *Sutton,* 1997 WL 34663, at * 7.   Accordingly, the central requirement for sanctions under Section 1927 and/or the Court's inherent authority is bad faith, "rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider*, 580 F.3d at 142.   An objective standard is employed to determine bad faith. *Chambers,* 501 U.S. at 47.   To find bad faith,[24] the Court must find that a party or counsel acted "vexatiously, wantonly or for oppressive reasons."[25] *Id.* at 45-46.   "To find bad faith, a court must find 'some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay.'" *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d at 617 (quoting *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir.1986)).   Moreover, bad faith conduct

---

[23] EEOC also contends that U.S. Steel's counsel, Eric Dreiband, knew that the law regarding same was unsettled, given his previous role as EEOC's Chief Counsel. (Docket No. 209 at p. 35, lns. 2-3).

[24] "Bad faith" itself is defined as "dishonesty of belief or purpose."  BLACK'S LAW DICTIONARY (9th ed. 2009).

[25] "Vexatious" is defined as "without reasonable or probable cause or excuse."[25] BLACK'S LAW DICTIONARY (9th ed. 2009). "Wanton misconduct requires 'that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it....'" *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 417 (3d Cir. 1990) (quoting *Evans v. Philadelphia Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965).   "A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 960 (7th Cir. 2010).

must be demonstrated through clear and convincing evidence.[26] *See Sutton*, 1997 WL 34663, at * 7 (clear and convincing evidence is required to prove bad faith conduct); *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011) (same).

With its briefing on the present Motions and the arguments advanced by its counsel during the April 25, 2012 hearing, EEOC has provided this Court with sufficient, legitimate, good faith reasons for its position.  EEOC was not dissuaded from disclosing confidential conciliation documents by the *LifeCare* decision because it correctly believed that said decision was not binding on this Court, as this Court is not bound by a decision of a fellow District Court judge.[27] *See Manley v. The Horsham Clinic*, Civ. A. No. 00-4904, 2001 WL 894230, at *4 (E.D. Pa. Aug. 9, 2001) (decisions of fellow District Court Judges are not binding authority on this Court, but instead, are merely persuasive); *see also Fishman & Tobin, Inc.*, 240 F.3d 956, 965 (11th Cir. 2001) (same).  Instead, EEOC asserts that it referenced the conciliation documents because U.S. Steel had alleged that EEOC failed to exhaust administrative remedies. (Docket No. 57 at 2).  Further, EEOC wanted to bring the same issues, i.e. failure to conciliate and waiver, to other jurists to elicit rulings on same (Docket No. 209 at p. 34, lns. 19-25), thought that it had found a case with similar facts that supported its waiver argument that should be brought to this Court's attention (Docket No. 111 at 29), and believed that it had not done anything wrong (Docket No. 209 at p. 30-31, lns. 25-1)**.**

___

[26] The Third Circuit has defined "clear and convincing" evidence as follows: "[The witnesses'] testimony [must be] so clear, direct, weighty, and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *United States Fire Ins. Co. v. Royal Ins. Co.,* 759 F.2d 306, 309 (3d Cir.1985).

[27] However, this Court did find Judge McVerry's reasoning persuasive, especially in light of this Court's ADR Policies and Procedures that require confidentiality. *See* U.S. District Court, Western District of Pennsylvania, ADR Policies and Procedures, *available at* http://www.pawd.uscourts.gov/Applications/pawd_adr/Documents/ADRPolicies.pdf (last modified Feb. 1, 2012). They provide that the contents of all documents and communications during the ADR process are confidential, as statutorily mandated by 28 U.S.C.§ 652(d). Further, in *Sheldone*, then Magistrate Judge Caiazza adopted the federal mediation privilege. *Sheldone v. Pennsylvania Tpk. Comm'n*, 104 F. Supp. 2d 511, 517 (W.D. Pa. 2000). The Court is also cognizant of the time honored principle that settlement discussions generally remain confidential. *See Bank of Am. Nat'l. Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 345 (3d Cir. 1986) (recognizing the confidentiality ordinarily afforded to settlement agreements). Moreover, "Federal Rule of Evidence 408 makes compromise offers inadmissible." *See Ward v. Allegheny Ludlum Steel Corp.*, 560 F.2d 579, 581 n.6 (3d Cir. 1977).

U.S. Steel has not presented any countervailing evidence to disprove EEOC's proffered reasons for its advocacy.[28]   Further, U.S. Steel has not shown clear and convincing evidence of bad faith on the part of EEOC or its counsel.   Given sufficient, legitimate, good faith reasons proffered by EEOC for its advocacy and the lack of countervailing evidence, this Court finds that its and its counsel's actions do not rise to the level of bad faith conduct.   Admittedly, the more appropriate and expeditious approach, at the outset, would have been the filing of a motion requesting leave to file the conciliation documents under seal,[29] at which time, the Court would have ordered a response and made a ruling.   This procedure would have likely avoided the extensive motion practice that occurred.   However, the Court is mindful that "th[e] bad faith requirement is [...] necessary to avoid chilling an attorney's legitimate ethical obligation to represent his client zealously." *LaSalle Nat'l Bank v. First Connecticut Holding Group*, 287 F.3d 279, 289 (3d Cir. 2002) (quoting *Baker Industr. Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985)).[30]

As the Court has found that EEOC and its counsel did not act in bad faith, based on the record presently before it, U.S. Steel is likewise not entitled to attorneys' fees and costs pursuant to 28 U.S.C. § 1927 or the Court's inherent authority.


V.   Conclusion:

Based on the foregoing, U.S. Steel's Motions for Attorneys' Fees and Costs (Docket Nos. 119; 146) are denied as premature and lacking evidentiary support.   However, the Court does not preclude the possibility of awarding attorneys' fees and costs, under 42 U.S.C. § 2000e-5(k) or 28 U.S.C. §

---

[28] The Court purposefully set a Hearing on the Motions for Attorneys' Fees and Costs in order to give the parties the opportunity to present evidence including testimony.   At the outset of said Hearing, the Court specifically asked counsel if they intended to introduce any further evidence in support of their arguments, and U.S. Steel responded in the negative. (Docket No. 209 at p. 3, lns. 12-17).

[29] *See In re: Confidentiality and Protective Orders in Civil Matters*, Misc. No. 05-45, Docket No. 1 (W.D. Pa. Jan. 27, 2005) ("On or after July 1, 2005, parties wishing to file documents under seal must obtain prior leave of Court for each document that is requested to be filed under seal.").

[30] There is also the requirement of particularized notice before the Court can exercise its inherent authority. *See Jones*, 899 F.2d at 1357.   The Court admits that the record may not support such notice requirement.

1927 or the Court's inherent authority, at the conclusion of the case, if the evidence before the Court at

that time warrants such an award.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Dated:          June 26, 2012
cc/ecf:          All Counsel of Record